## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAYLOR BROWN,** *et al.* | **:** | |
| | **:** | |
| Plaintiffs | **:** | |
| | **:** | |
| **v.** | **:** | Civil Action No. |
| | **:** | |
| **COL. CHRISTOPHER PARIS,** | **:** | |
| Commissioner of Pennsylvania | **:** | |
| State Police | **:** | |
| | **:** | |
| Defendant | **:** | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Introduction** ............................................................................1

**Factual Background** ....................................................................4

I.    Pennsylvania bans 18-to-20-year-old adults from carrying and transporting firearms for the purpose of self-defense ........................4

II.   Pennsylvania precludes 18-to-20-year-old adults from obtaining a LTCF ....................................................................7

III.  Facts specific to Plaintiffs ........................................................9

    *a. Individual Plaintiffs* ............................................................9

    *b. Plaintiff Second Amendment Foundation* ...........................................12

**Argument** ....................................................................13

I.    Plaintiffs are likely to succeed on the merits. ...........................................14

    *a. The Second Amendment's Plain Text Protects Plaintiffs' Conduct* ............................................................15

    *b. There Exists No Historical Tradition Of Similar Firearm Regulation* ............................................................16

II.   Plaintiffs will suffer irreparable injury absent preliminary injunctive relief ....................................................................17

III.  The other equitable factors favor the issuance of a preliminary injunction ....................................................................18

IV.  The Court should waive the bond or set it at a nominal amount....................................................................18

V.   The Court Should Enter Final Judgment Awarding a Permanent Injunction. ....................................................................19

**Conclusion** ....................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097 (9th Cir. 1998)...................20

*Borough of Palmyra, Bd. of Educ. v. F.C. Through R.C.*, 2 F.Supp.2d 637 (D.N.J. 1998)...........................................................................................19

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ......................................................1

*Commonwealth v. Goosby*, 380 A.2d 802 (Pa. Super. Ct. 1977) .............................7

*Commonwealth v. Hawkins*, 547 Pa. 652 (1997) .....................................................4

*Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. Ct. 2000) ........................4, 7

*Commonwealth v. Lopez*, 523 Pa. 126 (1989).............................................................6

*Commonwealth v. Turner*, 488 A.2d 319 (Pa. Super. 1985).....................................6

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ............................18

*Curtis 1000, Inc. v. Suess*, 24 F.3d 941 (7th Cir. 1994) .........................................20

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................1, 2, 15

*Dream Palace v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004) ...................20

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ..................................................19

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)..........................................17

*Getzes v. Mackereth*, 2013 WL 5882040 (M.D. Pa. Oct. 30, 2013) ......................20

*Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121 (3d Cir. 2017) ................................18

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99 (3d Cir. 2013) .............................................................................................................17, 18

*Kickapoo Traditional Tribe of Texas v. Chacon,* 46 F.Supp.2d 644 (W.D. Tex. 1999).....................................................................................................20

*Koons v. Reynolds*, 649 F. Supp. 3d 14 (D.N.J. 2023)...........................................17

*Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024)
.................................................................................................................1, 3, 15, 16

*Lewis v. Kugler*, 446 F.2d 1343 (3d Cir. 1971)........................................17

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) .............................2, 15, 17

*Miller v. Skumanick*, 605 F. Supp. 2d 634 (M.D. Pa. 2009) ..............13, 17

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012)....................................21

*Morris v. District of Columbia*, 38 F. Supp. 3d 57 (D.D.C. 2014) .........20

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ............1, 3, 14, 17

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017).......................13

*Temple Univ. v. White*, 941 F.2d 201 (3d Cir. 1991) ...............................19

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017).........18, 21

## Statutes

18 Pa.C.S. § 106 ...........................................................................................2

18 Pa.C.S. § 501 ...........................................................................................7

18 Pa.C.S. § 6102 .........................................................................................5

18 Pa.C.S. § 6106 ..................................................................................passim

18 Pa.C.S. § 6107 .........................................................................................3

18 Pa.C.S. § 6108 ..................................................................................passim

18 Pa.C.S. § 6109 ..................................................................................passim

18 Pa.C.S. § 6119 .........................................................................................2

18 U.S.C. § 922 .............................................................................................2

## Rules

*DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149 (3d Cir. 1984) ...............19

Federal Rule of Civil Procedure 65 ............................................................18, 19, 20

## Treatises

11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL
    PRACTICE AND PROCEDURE ..................................................................................17

## Constitutional Provisions

Fourteenth Amendment to the U.S. Constitution ......................................................1

Second Amendment to the U.S. Constitution ..................................................passim

# INTRODUCTION

There can be no dispute that the Second and Fourteenth Amendments protect the rights of 18-to-20-year-olds to carry firearms, particularly for self-defense outside the home. *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 137 (3d Cir. 2024).[1]

Yet, in outright defiance of the Third Circuit's decision in *Lara* and the U.S. Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008),[2] *Caetano v. Massachusetts*, 577 U.S. 411, 413-14 (2016)(Alito J., concurring),[3] and most recently, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022),[4] the Commissioner of the Pennsylvania State Police continues to actively enforce 18 Pa.C.S. §§ 6106(a)-(b), 6108, 6109(b) and the regulations, policies, enforcement practices, and actions related thereto (hereinafter collectively "regulations") that not only effectively bar the Individual Plaintiffs and Second Amendment Foundation's ["SAF"] similarly situated members (hereinafter

---

[1] Holding that Pennsylvania's law banning 18-to-20-year-olds from carrying firearms outside their homes during state of emergency was violative of the Second Amendment.

[2] Declaring that—at the *core* of the Second Amendment—to "bear arms" means to "wear, bear, or *carry…upon the person or in the clothing or in a pocket*, for the purpose…of *being armed and ready for offensive or defensive action* in a case of conflict with another person."

[3] Declaring that the possession and use of *even stun guns in public* is protected by the Second Amendment.

[4] Declaring that the Second Amendment protects the carrying of firearms outside the home.

collectively "Plaintiffs") from wearing, bearing, carrying, and transporting firearms, including upon their person or in a pocket—whether openly or concealed, loaded or unloaded—outside of their homes, but also threaten Plaintiffs with draconian criminal sanctions[5] should they do so, which if convicted for a violation thereof, would result in them being perpetually prohibited from firearm ownership under federal law, pursuant to 18 U.S.C. § 922(g)(1). But the breadth of these unconstitutional regulations goes even further, making felons out of anyone who, without a license to carry firearms ["LTCF"] stops to pick up a friend, grab a cup of coffee, or utilize a bathroom, while carrying or transporting his/her firearms to an extremely limited number of locations that are permitted by Defendant.

Plaintiffs only desire to exercise their core, fundamental, individual right to lawfully carry and lawfully transport firearms in public and in vehicles for all lawful purposes including immediate self-defense—a right the Constitution guarantees in its text. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)("[I]ndividual self-defense is 'the central component' of the Second Amendment right"); *Heller*, 554 U.S. at 592 (The right to keep and bear arms guarantees "the individual right to possess and carry weapons in case of

---

[5] A violation of 18 Pa.C.S. § 6106 is a felony of the third degree, which can be punished by up to 7 years in jail, per 18 Pa.C.S. § 106(b)(4). A violation of 18 Pa.C.S. § 6108, per 18 Pa.C.S. § 6119, is a misdemeanor of the first degree, which can be punished by up to 5 years in jail, per 18 Pa.C.S. § 106(b)(6).

confrontation."); *Bruen*, 142 S.Ct. at 2122 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). Nothing in the Constitution's text nor the Nation's historical tradition of firearm regulation supports the categorical ban that the prior and continuing enforcement of Defendant's regulations impose on Plaintiffs. Defendant's regulations thus unconstitutionally prohibit and criminalize lawful, constitutionally protected conduct that Plaintiffs seek to engage in, including, but not limited to, lawfully carrying and lawfully transporting firearms for self-defense, including in Philadelphia, and merely being able to stop for a bathroom break, grab a cup of coffee or bite to eat, or pick up a friend on the way to or from a firearm shooting range.

Even though the Third Circuit in *Lara* already held that the "People," to which the Second Amendment applies, includes 18-to-20-year-olds and that Pennsylvania's state of emergency provision—18 Pa.C.S. § 6107—was unconstitutional in relation to 18-to-20-year-olds because it precludes them from being able to carry a firearm for their protection during a state of emergency, Defendant continues to enforce the regulations complained of herein against the Plaintiffs; thereby, depriving them of their right and ability to lawfully carry and lawfully transport firearms. While individuals in Pennsylvania are *purportedly* not barred from openly carrying firearms in public absent a LTCF (except in the City of

Philadelphia),[6] due to a myriad of laws and the general prohibition of utilizing any mode of conveyance while carrying or otherwise transporting a firearm, Plaintiffs are unable to exercise their fundamental right.

As the Defendant's regulations clearly, palpably, and unconstitutionally infringe on Plaintiffs' Second Amendment rights, this Court should initially issue a temporary restraining order and thereafter, once briefing on Plaintiffs' request for a preliminary injunction has concluded, issue an injunction enjoining enforcement of Defendant's regulations.

## FACTUAL BACKGROUND

### I. Pennsylvania bans 18-to-20-year-old adults from carrying and transporting firearms for the purpose of self-defense

Pursuant to 18 Pa.C.S. § 6106, Pennsylvania generally requires an individual to obtain a LTCF to carry a concealed firearm in public. Section 6106 (a)(1) provides that "any person who carries a firearm in any vehicle or any person who carries a

_____

[6] While many cite to the Pennsylvania Supreme Court's decision in *Commonwealth v. Hawkins*, 547 Pa. 652, 657, fn. 4 (1997) for the proposition that "[e]xcept in Philadelphia, firearms may be carried openly without a license," the Court did not address the Commonwealth's draconian carry and transportation laws in relation to the open carry of firearms. However, the Superior Court has held that "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the limited exceptions found in Section 6106(b); thereby, reflecting that the open carry of firearms is limited to the extremely limited, enumerated locations in Section 6106(b). *Commonwealth v. Hopkins*, 747 A.2d 910, 918 (Pa. Super. Ct. 2000).

firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under [18 Pa.C.S. § 6109] commits a felony of the third degree." Section 6106(b) provides a number of exceptions to this requirement—for law-enforcement officers, members of the military, and the like—but these exceptions do not provide the typical, peaceable, law-abiding Pennsylvanian—like Plaintiffs—with the ability to carry a concealed, loaded, and operable firearm[7] for most lawful purposes, including self-defense. Moreover, it prohibits individuals, in the absence of a LTCF, from transporting even unloaded firearms except to extremely limited locations and *only when* transported *directly to and from* those limited locations.[8]

As a result of Section 6106(b), an individual, in the absence of a LTCF, is, for example, precluded from: (a) transporting a loaded or unloaded rifle, shotgun, or

---

[7] For purposes of the applicable exceptions of Section 6106(b) to the Plaintiffs, a firearm is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of the weapon;" thus, including all types of firearms, unlike the general definition of firearm found in 18 Pa.C.S. § 6102.

[8] Plaintiffs are thus barred from stopping for coffee or to use the bathroom when going to an enumerated location, as they must go directly to and from that enumerated location from another enumerated location. *See* § 6106(b)(4),(8),(9), limiting the applicable enumerated locations to going directly to or from 1. a gun range; 2. their home or vacation home; 3. their business; 4. a gun store; and 5. a hunting location.

handgun to a friend's or family member's home;[9] (b) transporting a loaded or unloaded rifle, shotgun, or handgun to stores of all forms (*e.g.* grocery store, convenience store, specialty store, department store, … etc), malls, restaurants, or Philadelphia; (c) transporting a loaded or unloaded rifle, shotgun, or handgun from a successful hunt to a business that processes/butchers the successfully taken game; (d) transporting a loaded or unloaded rifle, shotgun, or handgun from a Federal Firearms Licensee (*i.e.* gun dealer) to another Federal Firearms Licensee or firing range; (e) transporting a loaded or unloaded rifle, shotgun, or handgun from a range to another range or, in the event of malfunction, to a Federal Firearms Licensee to address any mechanical issue with the firearm; and, (f) while transporting a loaded or unloaded rifle, shotgun, or handgun to or from a range or other permitted location specified in Section 6106(b) from stopping for bathroom breaks, food, coffee, or to pick up or drop off a friend.

---

[9] *See*, *Commonwealth v. Turner*, 488 A.2d 319, 323 (Pa. Super. 1985), *abrogated on other grounds,* by *Commonwealth v. Lopez*, 523 Pa. 126 (1989)(declaring that a violation of Section 6106 occurs where an individual travels to the home "of a parent, a son or daughter, or any other person with whom the defendant may have had the most close and personal relationship, so long as it is not his own abode; similarly, the crime is committed if the weapon is concealed upon his person while at a business establishment of people with whom he regularly does business, if this is not *his* 'fixed place of business'.") (emphasis in original).

Although Pennsylvania *purportedly* allows individuals to openly carry firearms without a license (except in Philadelphia),[10] it has broadly criminalized the carrying of loaded concealed firearms in public and in vehicles[11] by ordinary citizens, unless they have a valid LTCF. It has also, pursuant to 18 Pa.C.S. § 6108, criminalized the carrying of all forms of firearms—regardless of whether loaded or unloaded—"upon the public streets or upon any public property"[12] of Philadelphia, unless the individual has a LTCF or meets an exemption under Section 6106(b). Thereby precluding Plaintiffs, *in toto*, from lawfully carrying and lawfully transporting loaded firearms for their protection in Philadelphia.

## II.   Pennsylvania precludes 18-to-20-year-old adults from obtaining a LTCF

18 Pa.C.S. § 6109(b) provides:

**Place of application.--**An individual who is 21 years of age or older

---

[10] *But see, Commonwealth v. Hopkins*, 747 A.2d at 918 (holding that the open carrying of a firearm is limited to the finite locations enumerated in Section 6106(b); *see also,* fn 6, *supra*.

[11] Vehicles are defined extremely broadly, pursuant 18 Pa.C.S. § 501, as "[a] conveyance of any kind, whether or not motorized, that is designed to transport people or property." Thus, bikes, horses, rollerskates, rollerblades, and even wheelbarrows constitute "vehicles" to which Section 6106 applies.

[12] For purposes of Section 6108, The public streets and property include not only government buildings and spaces but also all roads and sidewalks "used by members of the public," *Commonwealth v. Goosby*, 380 A.2d 802, 806 (Pa. Super. Ct. 1977), and "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the exceptions found in Section 6106(b), *Commonwealth v. Hopkins*, 747 A.2d at 918.

> may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth. If the applicant is a resident of this Commonwealth, he shall make application with the sheriff of the county in which he resides or, if a resident of a city of the first class, with the chief of police of that city

While Section 6109(b) seemingly requires an applicant to be 21 years of age or older, Section 6109(e) does not specify that a license shall not be issued to someone who is under the age of 21. *See*, Section 6109(e)(1)(i—xiv).

Nevertheless, although 18 Pa.C.S. § 6109 purports to provide sole-discretion to county sheriffs as to whether to issue a LTCF, the Defendant, through his PSP, requires sheriffs to utilize his LTCF licensing portal, which precludes sheriffs from issuing a LTCF to an applicant who has been denied or otherwise disapproved of by the PSP, including those applicants who are between 18 and 20 years of age.[13] Specifically, upon a sheriff attempting to process an application of an individual between 18 and 20 years of age, whenever he or one of his deputies attempt to either swipe the applicant's driver's license or state issued identification card or manually insert the applicant's information into the PSP's LTCF processing portal (hereinafter "PSP's system"), the PSP's system precludes him from being able to submit the information for processing, approval, and issuance of the LTCF.[14] Instead of allowing a sheriff or his deputies to submit the information for processing, approval,

---

[13] Declaration of Butler County Sheriff Michael Slupe, ¶ 2.
[14] *Id.*, ¶ 3.

and issuance, the PSP's system outlines the date of birth section in red and pops up a box declaring "Validation Failed", indicating that because the individual is under 21 years of age, the sheriff cannot approve the applicant and issue the LTCF.[15] In the absence of being able to process the applicant through the PSP's system and obtain an approval from the PSP, no sheriff throughout this Commonwealth has an ability to issue a LTCF to an applicant, as the ability to issue the LTCF is through the PSP's system.[16] Thus, the PSP, through its system, is actively precluding sheriffs throughout this Commonwealth from approving applicants between the ages of 18 and 20 and issuing LTCFs to them.[17] And Butler County Sheriff Slupe has declared that "if PSP's system and 18 Pa.C.S. § 6109 did not preclude me from issuing an LTCF to an otherwise eligible applicant between the ages of 18 and 20 years old, I would issue LTCF's to those otherwise eligible applicants."[18]

## III.    Facts specific to Plaintiffs

### a.    *Individual Plaintiffs*

The Individual Plaintiffs are all law-abiding, responsible, peaceable citizens, between the ages of 18 and 21, who are not prohibited from purchasing, possessing,

---

[15] *Id*., ¶ 4; *see also*, Exhibit D to the underlying motion.

[16] *Id*., ¶ 5.

[17] *Id*., ¶ 6.

[18] *Id*., ¶ 7.

and utilizing firearms,[19] own firearms and desire to procure LTCFs to be able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, concealed on their persons and in motor vehicles, in public for all lawful purposes including self-defense of themselves and their family.[20] They also desire to be able to lawfully transport all of their firearms within the Commonwealth, without restriction, including, but not limited to, being able to: **(a)** with an unloaded firearm, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from: (i) a range; (ii) target shooting; (iii) a place of purchase to their home or place of business; (iv) a place of repair, sale or appraisal; and (v) a place of abode or business to another; **(b)** with an unloaded firearm, travel throughout the Commonwealth to and from lawful places, where they may otherwise lawfully possess and carry a firearm, including, but not limited to: (i) friends' houses; (ii) businesses; and, (iii) from a successful hunt to a business that processes/butchers the successfully taken game; **(c)** travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth, including Philadelphia, a loaded, operable firearm on her person for self-defense, defense of their family and others, and in case of confrontation in public requiring defensive

---

[19] *See*, Exhibits A-C of the underlying motion.
[20] Declaration of Brown, ¶¶ 1-4, 10; Declaration of Palmer, ¶¶ 1-4, 10; Declaration of Ness, ¶¶ 2-5, 11.

action, including carrying and transporting that loaded and operable firearm to numerous specific locations, as identified in their Declarations.[21]

Due to the location of their homes in relation to all the locations identified in their Declarations, they are unable to lawfully carry or lawfully transport a firearm on their persons, whether concealed or openly, while walking or otherwise traversing on foot the distances between their homes and those locations, especially in the event (1) of any purchases at those locations and the need to additionally carry those purchases back to their homes or (2) a successful hunt and the need for them to carry such to a business that processes/butchers the successfully taken game.[22] Thus, as a result of Defendant's active enforcement of Section 6109(b) and his PSP's system, Defendant is precluding Plaintiffs from obtaining a LTCF and therefore subjecting them to the carry and transportation restrictions specified in Sections 6106 and 6108, for which Defendant is also actively enforcing, and which criminalizes Plaintiffs' desired conduct, *in toto*, to lawfully carry and lawfully transport firearms to and from the aforementioned locations and activities, as well as, for purposes of self-defense.[23]

---

[21] Declaration of Brown, ¶ 5; Declaration of Palmer, ¶ 5; Declaration of Ness, ¶ 6.
[22] Declaration of Brown, ¶ 5(d); Declaration of Palmer, ¶ 5(d); Declaration of Ness, ¶ 6(d).
[23] Declaration of Brown, ¶ 6; Declaration of Palmer, ¶ 6; Declaration of Ness, ¶ 7.

> b.      *Plaintiff Second Amendment Foundation*

SAF, a nonprofit educational foundation, has over 720,000 members and supporters nationwide, including thousands of members and supporters in Pennsylvania, inclusive of the Plaintiffs Brown, Palmer, and Ness, who are residents of the Commonwealth of Pennsylvania, between the ages of 18 and 20, who would lawfully carry and lawfully transport firearms for the protection of themselves, loved ones, and others, but for Defendant's enforcement of the regulations.[24]

SAF's similarly situated members: (a) are United States citizens; (b) are between the ages of 18 and 20; (c) are not under indictment; (d) have never been convicted of any felony or misdemeanor crime of domestic violence; (e) have never been convicted of any crime punishable by more than one (1) year of imprisonment; (f) are not fugitives from justice; (g) are not unlawful users of any controlled substance; (h) are not addicted to any controlled substance; (i) have not been adjudicated as mental defective or been committed to any mental institution; (j) have not been discharged from the Armed Forces under dishonorable conditions; (k) have never renounced their citizenship; (l) are not the subject of any restraining order relating to an intimate partner; (m) cannot obtain a LTCF due to Section 6109(b) and

---

[24] Declaration of Alan Gottlieb, ¶¶ 3, 5.

the PSP's system; and, (n) are subject to the restrictions imposed by Sections 6106, 6108.[25]

## ARGUMENT[26]

An initial restraining order and thereafter, preliminary injunctive relief is appropriate and should be granted pending this Court's ruling on the merits of Plaintiffs' claim so long as the facts and circumstances demonstrate (1) a likelihood of success on the merits and (2) a prospect of irreparable injury if the injunction is not granted. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). In addition, "the district court . . . should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* The standard for granting a temporary restraining order under F.R.C.P. 65 is the same as that for issuing a preliminary injunction. *Miller v. Skumanick*, 605 F. Supp. 2d 634 (M.D. Pa. 2009), *aff'd sub nom. Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010).

As is readily apparent from the factual and legal background outlined above, all four factors strongly favor a temporary restraining order and preliminary injunctive relief.

---

[25] *Id.*, ¶ 6.
[26] Due to L.R. 7.8(b), Plaintiffs have substantially reduced their argument section.

I.     **Plaintiffs are likely to succeed on the merits.**

The Supreme Court in *Bruen* explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. To counter this presumptive protection, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. In fact, *Bruen* could not be clearer in its holding that it is *the government* that bears the burden of justifying its firearm regulations. *See id.* at 24 ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."); *id.* at 33-34 (explaining "the burden falls on respondents"); *id.* at 38-39 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)).

The *Bruen* Court eschewed a two-step analysis, instead, calling courts to look to the "text, as informed by history." *Id.* at 19. To determine whether a restriction is constitutional, the Court explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24. It is the Government's burden to "affirmatively prove that its firearms regulation is part of

the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

a.     *The Second Amendment's Plain Text Protects Plaintiffs' Conduct*

As set forth *supra*, the U.S. Supreme Court has already declared that "self-defense is 'the central component' of the Second Amendment right" (*McDonald*, 561 U.S. at 767) and that to "bear arms" means to "wear, bear, or *carry…upon the person or in the clothing or in a pocket*, for the purpose…of *being armed and ready for offensive or defensive action* in a case of conflict with another person" (*Heller*, 554 U.S. at 584), and the Third Circuit has held that the "People," to which the Second Amendment applies, includes 18-to-20-year-olds. *Lara*, 91 F.4th at 132.

Thus, as set forth in *supra* in the Factual Background, there can be no dispute that the Second Amendment covers Plaintiffs' desired conduct of (1) being able to procure LTCFs to be able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, concealed on their persons and in motor vehicles, in public for all lawful purposes including self-defense of themselves and their family, and (2) in the absence of a LTCF, being able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, concealed and openly on their persons and

in motor vehicles, in public for all lawful purposes including self-defense of themselves and their family.[27]

      *b.*    *There Exists No Historical Tradition Of Similar Firearm Regulation*

Although the burden is on the Commissioner to establish a historical tradition of similar firearm regulation around the time of Founding, the Third Circuit has already found that none exists. Specifically, the Third Circuit in *Lara* declared that "the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns" and no "evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights." 91 F.4th at 137.

          \*          \*          \*          \*

Accordingly, there can be no dispute, based on binding precedent, that there exists no similar historical tradition and that Plaintiffs will likely be successfully on the merits.

---

[27] Declaration of Brown, ¶¶ 4-5, 11; Declaration of Palmer, ¶¶ 4-5, 11; Declaration of Ness, ¶¶ 5-6, 12.

## II.     Plaintiffs will suffer irreparable injury absent preliminary injunctive relief

As Plaintiffs have an extreme likelihood of success on their constitutional claims compels the conclusion that Plaintiffs face irreparable injury in the absence of injunctive relief. It is well-accepted that the deprivation of a constitutional right constitutes irreparable harm. *See, e.g.*, *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013); *see also* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Third Circuit has recognized this rule in the context of a variety of constitutional rights. *See, e.g.*, *K.A. ex rel. Ayers*, 710 F.3d at 113. (First Amendment); *Lewis v. Kugler*, 446 F.2d 1343, 1350 (3d Cir. 1971) (Fourth Amendment). Rights under the Second Amendment should be treated no differently. *McDonald*, 561 U.S. at 780; *Ezell v. City of Chicago*, 651 F.3d 684, 700 (7th Cir. 2011). As declared by the District Court of New Jersey, "[b]ecause the Second Amendment protects the right to bear arms for self-defense in public, state restrictions that are so extensive and burdensome as to render that right illusory must constitute irreparable injury." *Koons v. Reynolds*, 649 F. Supp. 3d 14, 42 (D.N.J. 2023). And as the *Bruen* Court held "[t]he constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of

rules than the other Bill of Rights guarantees."597 U.S. at 6, (quoting *McDonald*, 561 U.S. at 780).

### III.   The other equitable factors favor the issuance of a preliminary injunction

The public interest and balance of equities likewise favor Plaintiffs. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), for "the enforcement of an unconstitutional law vindicates no public interest," *K.A. ex rel. Ayers*, 710 F.3d at 114; *see Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."); *see also Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017). On the other side of the scale, Defendant suffers no harm, as he and his PSP have no valid interest in enforcing Pennsylvania's unconstitutional laws.

### IV.   The Court should waive the bond or set it at a nominal amount

While Federal Rule of Civil Procedure 65 provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined," the Third Circuit has recognized that the district court may sometimes dispense with that requirement. *Temple Univ. v. White*, 941

F.2d 201, 219 (3d Cir. 1991). In "noncommercial cases" such as this one, the court should "balance the equities" implicated by the request for an injunction, *Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996), and "should also consider whether the applicant seeks to enforce a federal right and, if so, whether imposing the bond requirement would unduly interfere with that right," *Borough of Palmyra, Bd. of Educ. v. F.C. Through R.C.*, 2 F.Supp.2d 637, 646 (D.N.J. 1998). Here, any injunction would not financially harm the Defendant and his PSP, while imposing a more than *de minimis* bond would unduly interfere with Plaintiffs' Second Amendment Rights. Plaintiffs should therefore not be required to post security, or should be required to post only a nominal amount.

## V.   The Court Should Enter Final Judgment Awarding a Permanent Injunction.

For the foregoing reasons, Plaintiffs are entitled to a preliminary injunction restraining the enforcement of the challenged restrictions on their Second Amendment rights; and because the claims in this case require no further factual development, permanent injunctive relief is likewise appropriate. FED. R. CIV. P. 65(a)(2) authorizes a court considering a motion for preliminary injunctive relief to "advance the trial on the merits and consolidate it with the hearing" on the motion for preliminary relief in appropriate cases. *See DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 152 n.6 (3d Cir. 1984) ("[A] preliminary injunction hearing may

be combined with a hearing on the merits, pursuant to Fed. R. Civ. P. 65(a)(2), if it is accompanied by notice to the parties sufficient to enable them to present all of their evidence."); *see also Getzes v. Mackereth*, 2013 WL 5882040, at *2 (M.D. Pa. Oct. 30, 2013). Courts have repeatedly held that such consolidation is appropriate where "no factual or legal disputes will remain once the Court resolves the preliminary injunction motion," *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 62 n.1 (D.D.C. 2014), such that "the eventual outcome on the merits is plain at the preliminary injunction stage," *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994); *accord Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1102 (9th Cir. 1998), *abrogated on other grounds Dream Palace v. County of Maricopa*, 384 F.3d 990, 1002 (9th Cir. 2004); *Kickapoo Traditional Tribe of Texas v. Chacon,* 46 F.Supp.2d 644, 648–49 (W.D. Tex. 1999).

That is the case here. The facts relevant to Plaintiffs' challenge—that they are law-abiding adults between the ages of 18 and 21, not disqualified from exercising their Second Amendment rights, and otherwise eligible to acquire a license to carry firearms in public, and that the effect of the challenged restrictions is to wholly prevent them from carrying firearms in public for self-defense—are not plausibly in dispute. Rather, whether Plaintiffs' challenge will prevail turns entirely on this Court's resolution of the questions of law presented above—questions that, as explained *supra*, the Court is bound to resolve in Plaintiffs' favor as a matter of law.

Accordingly, "the merits of the plaintiffs' challenge are certain and don't turn on disputed facts," and the Court should enter final judgment and permanent, not merely preliminary, injunctive relief. *Wrenn*, 864 F.3d at 667; *see also Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

## CONCLUSION

For all these reasons, this Court should restrain and thereafter enjoin Defendant and his PSP from enforcing those provisions of 18 Pa. C.S. §§ 6106, 6108, and 6109 that prohibit Plaintiffs and other similarly situated peaceable, law-abiding adults from exercising their Second Amendment right to carry operable firearms in public for all lawful purposes, including self-defense.


Date: June 20, 2024                                        Respectfully Submitted,


                                                           Joshua Prince, Esq.
                                                           Joshua@Civilrightsdefensefirm.com
                                                           PA Bar No. 306521
                                                           CIVIL RIGHTS DEFENSE FIRM, P.C.
                                                           646 Lenape Road
                                                           Bechtelsville, PA 19505
                                                           (888) 202-9297 ext 81114
                                                           (610) 400-8439 (f)

Adam Kraut, Esq.
Akraut@SAF.org
PA Bar No. 318482
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, WA  98005
(425) 454-7012

Attorneys for Plaintiffs

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, the undersigned, certify that the foregoing brief complies with the Local Rule 7.8(b), permitting the Plaintiffs up to and including 5,000 words. This brief contains 4,999 words, as calculated by the word processing system used to prepare this brief.

Joshua Prince, Esq.
Attorney Id. No. 306521