IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAYLOR BROWN,** *et al.* : | |
| : | |
| Plaintiffs : | |
| : | Civil Action No. 1:24-CV-1015 |
| v. : | |
| : | |
| **COL. CHRISTOPHER PARIS,** : | |
| Commissioner of Pennsylvania : | **(Judge Christopher Conner)** |
| State Police : | |
| : | |
| Defendant : | |

**PLAINTIFFS' SUPPLMENTAL MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Pursuant to the Court's Scheduling Order of June 24, 2024 (Doc. 9), Plaintiffs submit this supplemental memorandum of law addressing the U.S. Supreme Court's decision in *U.S. v. Rahimi*, No. 22-915, 602 U.S. _____, 2024 WL 3074728 (U.S. June 21, 2024), where, as addressed *infra*, the Court held in a criminal context that a *temporary* prohibition on firearms possession can be constitutional, provided such occurs after due process protections are afforded, where a judge finds that the individual poses a credible threat to the physical safety of another, and is for a limited duration.

As counsel explained during the scheduling conference on June 24, 2024, Plaintiffs respectfully believe that *New York State Rifle & Pistol Ass'n v. Bruen*, 597

U.S. 1, 11 (2022) and *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024) are more applicable to Plaintiffs' claims than *Rahimi*, as the *Bruen* Court specifically considered, in a civil context, whether a license to carry firearms scheme was constitutional, where the applicants were precluded from obtaining a license due to a requirement that they demonstrate a special need beyond a generalized concern for self-defense. In holding such requirement unconstitutional, the Court declared that the "Second Amendment's plain text thus presumptively guarantees petitioners Koch and Nash a right to 'bear' arms *in public for self-defense*" and that there is no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id*. at 33, 38 (emphasis added).

Further, the Third Circuit's *Lara* precedent, which is consistent with *Bruen* and *Rahimi*, already establishes that there were no similar founding-era restrictions on the rights of 18-to-20-year-olds to carry arms in public. Specifically, in *Lara,* 91 F.4th at 137, in applying the *Bruen* analysis, beyond holding that Second Amendment rights apply 18-to-20-olds, the Third Circuit, in striking down Pennsylvania's state of emergency prohibition, declared that "the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns" and no "evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights." While *Rahimi* had not yet been decided, as discussed *infra*, the *Rahimi*

2

analysis is identical in all regards to the *Bruen* analysis, as reflected by the *Rahimi* Court's continual citation to the *Bruen* test, and the Third Circuit applied the "why and how" analysis to the laws cited by the Defendant. *See*, *Lara,* 91 F.4th at 135-37. As the Third Circuit noted, contrary to restricting the rights of 18-to-20-year-olds, the laws in place around 1791 "indicate[] that founding-era lawmakers believed those youth could, and indeed should, keep and bear arms." *Id*. at 136.

In this matter, like *Bruen* and *Lara*, Plaintiffs, in a civil context, seek only to carry firearms in public for self-defense, but are precluded by Defendant's active enforcement of 18 Pa.C.S. §§ 6106(a)-(b), 6108, and 6109(c).

Nevertheless, to the extent, *arguendo*, this Court believes *Rahimi* to be more applicable, in *Rahimi*, the Court considered whether a law temporarily prohibiting an individual from possessing a firearm was constitutional, where such deprivation is limited in duration, only occurring after a hearing where the defendant is provided due process, and when the court order includes a finding that the individual "represents a credible threat to the physical safety of [an] intimate partner." 2024 WL 3074728, at *3. In holding that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment" (*id*. at *11), the Court reaffirmed the analysis provided in *Bruen* that "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent

3

with the Nation's historical tradition of firearm regulation'," [1] *id.* at *5 (citing *Bruen*, 597 U.S. at 24). [2] The Court went to declare:

> As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances" … Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id*. at *6 (citations omitted).

In finding that Rahimi could be temporarily prohibited as a result of surety and "going armed" laws, [3] the Court emphasized that such was a result of the "why and how" analysis, as the "regulations target[ed] individuals who

---

[1] It bears noting that the Court focused on laws enacted around the time of the ratification of the Second Amendment in 1791. This is consistent with the Third Circuit's holding in *Lara*, 91 F.4th at 134, that the Second Amendment must be "understood according to its public meaning in 1791."

[2] *See also*, *id*. at *6.

[3] It must be noted that the *Bruen* Court found the same surety and going armed laws *not to support* restrictions on the ability of a law-abiding to carry a firearm in public for purposes of self-defense. *See*, 597 U.S. at 50, 55-60.

*physically threatened others*," (*id.* at *7-8 (emphasis added)) and "reject[ed] the Government's contention that Rahimi may be disarmed simply because he is not 'responsible'." *Id.* at *11. Specifically, in relation to the surety laws, they permitted "magistrates to require individuals suspected of future misbehavior to post a bond…[and if] an individual failed to post a bond, he would be jailed." In relation to "going armed" laws, these were laws "for punishing those who had menaced others with firearms;" whereby, if convicted, the individual could be punished by "forfeiture of the arms and imprisonment." *Id.* at *8-9. The Court, in distinguishing *Bruen*'s analysis of the same surety and "going armed laws," explained that "Section 922(g)(8) restricts gun use to mitigate *demonstrated threats of physical violence*, just as the surety and going armed laws do. Unlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally." *Id.* at 9 (emphasis added).

Thus, like 18 U.S.C. § 922(g)(8), the historical surety and "going armed" laws only permitted the deprivation of one's Second Amendment

5

rights *after* a hearing, providing for due process,[4] and then, only temporarily,[5] if at all, as the individual had to be offered an opportunity to post a bond or request exception for a purpose such as self-defense;[6] whereby, if the bond was posted or exception granted, the individual would continue to retain his Second Amendment rights. However, in relation to this matter, like the laws in *Bruen* and *Lara*, the challenged statutes apply to the public generally. They are not limited to demonstrated threats of physical violence. Moreover, just in analyzing the "how,"[7] neither 18 Pa.C.S. § 6106 nor 18 Pa.C.S. § 6108 provide

---

[4] As the Court acknowledged, surety laws provided "significant procedural protections … [because before] the accused could be compelled to post a bond … a complaint had to be made to a judge or justice of the peace by 'any person having reasonable cause to fear' that the accused would do him harm or breach the peace. The magistrate would take evidence, and—if he determined that cause existed for the charge—summon the accused, who could respond to the allegations. Bonds could not be required for more than six months at a time, and an individual could obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Id.*, at *8.

[5] *Id.*, footnote 4, *supra*.

[6] *Id.*, footnote 4, *supra*.

[7] At this juncture, Plaintiffs are unaware of the "why" aspect to these laws. For example, in relation to Section 6108 – which treats Philadelphia differently than all other portions of the Commonwealth – the *Bruen* Court already declared that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." 597 U.S. at 31. Thus, based on the binding precedent, there would not appear to be any basis in the law for the ongoing enforcement of Section 6108; yet, Commissioner Paris and his PSP continue to enforce and defend it.

*any* form of due process, either *pre-* or *post*-deprivation,[8] establishing that an individual poses a physical threat to another and, as the prohibition is lifelong, it cannot be said to be temporary. Furthermore, there is no ability to post a bond to be exempted from the laws nor does the law provide an exception for "self-defense." In relation to 18 Pa.C.S. § 6109, it too likewise fails, as it does not provide any form of due process, nor does it provide an ability to post a bond or be exempted from having to be 21 years of age for self-defense purposes. While the prohibition of Section 6109 is not lifelong,[9] it is important to note that the *Rahimi* Court emphasized that it was the judicially-established credible threat to the physical safety of another (*i.e.* dangerousness of the individual) that constitutionally permitted the temporary deprivation. Moreover, in performing the "why and how" analysis, it was the combination of due process protections being provided, where a judicial determination was made that the individual posed a threat to another, *along with* the temporary

---

[8] In this matter, as the deprivation of Sections 6106 and 6108 occurs at the time of birth and applies through the time of death, there is no *pre*-deprivation. Rather, it is an absolute deprivation that is devoid of any nexus to a threat of physical harm, let alone, a judicially-established threat of physical harm to another. Even if, *arguendo*, there were a threat of physical harm provision in these statutes, as they apply from immediacy of birth, it is a legal impossibility for an infant to have physically threatened anyone merely upon birth.

[9] A prohibition of three years is hardly temporary and is six times the temporary prohibition that the Court found to be constitutional.

nature of the deprivation that resulted in Section 922(g)(8)'s constitutionality; none of which is provided for in relation to laws challenged in this matter.

Thus, for all the foregoing reasons, including those specified in Plaintiffs' brief in support, this Court should restrain and thereafter enjoin Defendant and his PSP from enforcing 18 Pa. C.S. §§ 6106(a)-(b), 6108, and 6109(b) and the regulations, policies, enforcement practices, and actions related thereto, that prohibit Plaintiffs and other similarly situated peaceable, law-abiding adults from exercising their Second Amendment right to carry operable firearms, whether loaded or unloaded, concealed or openly, in public for all lawful purposes, including self-defense.

Date: June 27, 2024                                    Respectfully Submitted,

_____
Joshua Prince, Esq.
Joshua@Civilrightsdefensefirm.com
PA Bar No. 306521
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)

             Adam Kraut, Esq.
             Akraut@SAF.org
             PA Bar No. 318482
             SECOND AMENDMENT FOUNDATION
             12500 N.E. Tenth Place
             Bellevue, WA  98005
             (425) 454-7012

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of June 2024, I caused to be served a true and correct copy of the foregoing on the following via the Court's ECF system:

Erich Greiner
Deputy Attorney General
Pennsylvania Office of Attorney General
Civil Law Division, Litigation Section
15th Floor, Strawberry Square
Harrisburg, Pa 17120
egreiner@attorneygeneral.gov


*/s/ Joshua Prince*
Joshua Prince, Esq.
Joshua@Civilrightsdefensefirm.com
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)