# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TAYLOR BROWN. SHAWN PALMER, MAX NESS,** *and* **SECOND AMENDMENT FOUNDATION,** | : : : | |
| **Plaintiffs** | : | |
| | : | **Civil Action No. 1:24-CV-1015** |
| **v.** | : | **Judge Conner** |
| | : | |
| **COL. CHRISTOPHER PARIS,** | : | |
| Commissioner of Pennsylvania State Police | : : | |
| **Defendant** | : | |

## BRIEF OF COL. CHRISTOPHER PARIS IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Respectfully submitted,

MICHELLE A. HENRY
**Attorney General**

By:   *s/ ERICH T. GREINER*

ERICH T. GREINER
**Deputy Attorney General**
**Attorney ID 331601**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-6301**

NICOLE R. DITOMO
**Chief Deputy Attorney General**
**Civil Litigation Section**

egreiner@attorneygeneral.gov

**Date: July 8, 2024**

**Counsel for Defendant**

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................ 1

PROCEDURAL HISTORY AND STATEMENT OF ALLEGATIONS ................ 1

  Procedural History ......................................................................... 1

  Statement of Allegations ................................................................. 2

QUESTIONS PRESENTED .................................................................... 3

  I.   Whether Plaintiffs' Motion for Temporary Restraining Order should be denied, because Plaintiffs cannot establish a likelihood of success on the merits of their underlying case, as the Commissioner does not issue concealed carry permits, and age restrictions on the issuance of concealed carry permits are permissible under the High Court's decisions in *Bruen* and *Rahimi*? ................... 3

  II.  Whether Plaintiffs cannot demonstrate an irreparable harm if the Court allows the continued enforcement of the Commonwealth's longstanding laws regulating the issuance of concealed carry permits? ............................... 3

  III.     Whether Plaintiff's Motion for Temporary Restraining Order should be denied, as any injunction mandating the issuance of concealed carry permits to eighteen to twenty-year olds upon request would place third parties in jeopardy of life, limb, and the law, harming the public's interest? ....................... 3

ARGUMENTS ...................................................................................... 4

  Standard .......................................................................................... 4

  I.   Plaintiffs' Motion for Temporary Restraining Order should be denied, because Plaintiffs cannot establish a likelihood of success on the merits of their underlying case. ............................................................................ 5

    A.  Commissioner Paris does not issue concealed carry permits. ................... 5

    B.  Age restrictions on the issuance of concealed carry permits are permissible under the High Court's decisions in *Bruen* and *Rahimi*. .................................. 8

      1.   History teaches that the Second Amendment was never intended to prevent States from regulating the ability of citizens to bear arms, including banning concealed carry. ................................................................. 13

        a.   States and municipalities during the founding era routinely regulated the bearing of arms. ..................................................................... 14

        b.   States and municipalities also routinely regulated the ability to bear firearms during the mid-nineteenth century. ............................. 15

        c.   These historical examples impose a comparable burden to modern ordinances, and are comparably justified. ................................... 17

  II.  Plaintiffs cannot demonstrate they would suffer an irreparable harm if the Court allows the continued enforcement of this Commonwealth's laws regulating the issuance of concealed carry permits. ............................. 19

III.     Plaintiff's Motion for Temporary Restraining Order should be denied, as
any injunction mandating the issuance of concealed carry permits to eighteen to
twenty-year olds upon request would place third parties in jeopardy of life, limb,
and the law, harming the public's interest............................................................21

CONCLUSION ......................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                     Page(s)

*1st Westco Corp. v. Sch. Dist. of Phila.*,
   6 F.3d 108 (3d Cir. 1993)……………………………………………………6

*American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994)…………………………………………………4

*Andrews v. State*,
   50 Tenn. 165 (1871)…………………………………………………………17

*Caba v. Weaknecht*,
   64 A.3d 39 (Pa. Cmwlth. 2013)………………………………………………5

*Coal. to Def. Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012)………………………………………………7

*Commonwealth v. Hawkins*,
   547 Pa. 652 (1997)..............................................................................20

*Commonwealth v. McCabe*,
   265 A.3d 1279 (Pa. 2021)………………………………………...……………9

*Coyne v. All State Insurance Co.*,
   771 F.Supp. 673 (E.D. Pa. 1991)……………………………………………9

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)…………………………………………10, 11, 15, 18

*Doyle v. Hogan*,
   1 F.4th 249 (4th Cir. 2021)…………………………………………………7

*Ex parte Young*,
   209 U.S. 123 (1908)………………………………………………………6, 7

*Ferring Pharm., Inc., v. Watson Pharm. Inc.*,
   765 F.3d 205 (3d Cir. 2014)…………………………………………………19

*Finberg v. Sullivan*,
   634 F.2d 50 (3d Cir. 1980)…………………………………………………7

*Germantown Cab Co. v. Phila. Parking Auth.*,
   206 A.3d 1030 (Pa. 2019)…………………………………………………9

*Glasco v. Hills*,
   558 F.2d 179 (3d Cir. 1977)…………………………………………………19

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989)…………………………………………………19

*Interest of J.J.M.*,
   265 A.3d 246 (Pa. 2021)…………………………………………………9

*Issa v. Sch. Dist. of Lancaster,*
  847 F.3d 121 (3d Cir. 2017)……………………………………………22

*K.A. ex rel. Ayers v. Pocono Valley Mountain School Dist.,*
  710 F.3d 99 (3d Cir. 2013)………………………….....................................21

*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019)……………………………………….14, 17

*Khouzam v. Attorney General of the United States,*
  549 F.3d 235 (3d Cir. 2008)……………………………………………9

*Lara v. Commissioner Pa. State Police,*
  97 F.4th 156 (3d Cir. 2024)……………………………………   14, 17

*Lara v. Commissioner Pennsylvania State Police,*
  91 F.4th 122 (2024)……………………………………………………..7, 15

*McCauley v. Univ. of the Virgin Islands,*
  618 F.3d 232 (3d Cir. 2010)……………………………………………6

*McDonald v. City of Chicago, Ill.,*
  561 U.S. 742 (2010)……………………………………………………11, 20

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,*
  24 F.3d 519 (3d Cir. 1994)……………………………………………..4

*New York State Rifle & Pistol Association v. Bruen,*
  597 U.S. 1 (2022)…………………………………………………..Passim

*Nat'l Rifle Ass 'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
  700 F.3d 185 (5th Cir.2012)……………………………………………14

*Nunn v. State,*
  1 Ga. 243 (1846)...................................................................................16

*Opticians Ass'n Am. v. Independent Opticians of Am.,,*
  920 F.3d 187 (3d Cir. 1990)……………………………………………4

*Ortho Pharmaceutical Corp. v. Amgen, Inc.,*
  882 F.2d 812 (3d Cir. 1989)……………………………………………4, 21

*Pa. Envtl. Def. Found. v. Commonwealth,*
  279 A.3d 1194 (Pa. 2022)……………………………………………9

*PSP v. McPherson,*
  831 A.2d 800 (Pa. Cmwlth. 2003)…………………………………………..5

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d Cir. 2017)……………………………………………19

*State v. Chandler,*
  5 La. Ann. 489 (1850)………………………………………………....15

*State v. Reid*,
  1 Ala. 612 (1840)..................................................................................16
*United States v. Gould*,
  672 F. Supp. 3d 167 (S.D. W.Va. 2023) ...........................................14
*United States v. Marcavage*,
  609 F.3d 264 (3d Cir. 2010)……………………………………………9
*United Staes v. Rahimi*,
  602 U.S. __ (2024)…………………………………....3, 8, 12, 13, 15
*United States v. Salerno*,
  481 U.S. 739 (1987)..............................................................................10
*Verizon Md., Inc. v. Pub. Serv. Comm 'n of Md.*,
  535 U.S. 635 (2002)................................................................................7
*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)..................................................................................6
*Williams v. Wingard*,
  2016 WL 4701495 (W.D. Pa. Sept. 8, 2016)…………………………….4

## Constitutional Provisions

U.S. Const. amend. II……………………………………………………Passim

## Statutes

18 Pa.C.S. §§6106, 6108……………………………………………………...1
18 Pa.C.S. §6109…………………………………………………………1, 2, 5

## Other Authorities

 Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA. L. REV. 65 (1983)…………………………………14
Joseph Greenlee, *Concealed Carry and the Right to Bear Arms*, 20 FEDSOCR 32 (2019)……………………………………………………………15, 16, 17
Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995)…………………………………………...19, 20

## INTRODUCTION

This is a civil rights action in which Plaintiffs attack the Commonwealth's longstanding firearms law allowing concealed carry permits to be issued to citizens who are at least twenty-one. Plaintiffs are individuals between eighteen to twenty-one, and a special interest group, who wish to see this safety law overturned. The Pennsylvania State Police's Commissioner, sued in his official capacity, is the sole defendant.

Plaintiffs' motion should be denied because the Commissioner lacks any authority to issue concealed-carry licenses under Pennsylvania law, so their claims against him are barred by the Eleventh Amendment.

## PROCEDURAL HISTORY AND STATEMENT OF ALLEGATIONS

### Procedural History

Plaintiffs filed their complaint on June 20, 2024. (Doc. 1). Plaintiffs raise both facial and *as-applied* challenges to 18 Pa.C.S. §6109, alleging that Pennsylvania's law requiring individuals to obtain a concealed-carry permit before legally carrying a concealed firearm on their person, or in a vehicle, and requiring an applicant be at least twenty-one years of age to obtain the permit, violates their right to "bear arms" under the Second Amendment. (*See* Doc. 1 ¶¶ 7-8, 101-115.)

Accordingly, Plaintiffs two-count complaint contends, 18 Pa.C.S. §§6106, 6108 are unconstitutional facially and *as-applied* to Plaintiffs under the Second

Amendment, and, in the alternative, that 18 Pa.C.S. § 6109 is facially

unconstitutional and *as-applied* under the Second Amendment. (*Id.*¶¶ 87-100;

101-116). Plaintiffs seek declaratory relief, or injunctive relief preventing the

enforcement of these public protection laws and regulations in whole or against

them. (*Id.* at ECF 43-46 ¶¶ a-j). Plaintiffs also seek nominal damages, costs,

attorney's fees, and any other relief this Court may grant. (*Id.*).

    Plaintiffs also filed a Motion for Temporary Restraining Order and

Preliminary Injunction. (Doc. 11 at ECF 8.) Defendant now files this Brief in

Opposition.

<u>Statement of Allegations</u>

    The individual plaintiffs in this case allege they are between the ages of 18

to 21 and are "law-abiding. . . citizens" who, despite knowing the law prevents

them from obtaining a concealed carry permit, have attempted to obtain, and have

been denied,  these permits. (Doc. 8 at 13-18.)

    They maintain that they have sought these permits in order to carry a

concealed firearm to all manner of places, for all manner of purposes, including to

possess a loaded handgun and "transport. . . their firearms within the

Commonwealth," while stopping for bathroom breaks, getting food or coffee, and

picking up or dropping off friends instead of returning directly to and from a range,

target shooting, their home or business, or the home and business of another. (*Id.* at

15.) They further claim the laws of this Commonwealth *de facto* preclude them from being able to partake in these and other activities because they cannot go armed in a vehicle without risking prosecution. (*Id.* at 15-16.)

Institutional Plaintiff, the Second Amendment Foundation, is an interest group who claims to have sued on behalf its similarly-situated members. (*Id.* at 17-18.)

## QUESTIONS PRESENTED

I.    **Whether Plaintiffs' Motion for Temporary Restraining Order should be denied, because Plaintiffs cannot establish a likelihood of success on the merits of their underlying case, as the Commissioner does not issue concealed carry permits, and age restrictions on the issuance of concealed carry permits are permissible under the High Court's decisions in *Bruen* and *Rahimi*?**

II.   **Whether Plaintiffs cannot demonstrate an irreparable harm if the Court allows the continued enforcement of the Commonwealth's longstanding laws regulating the issuance of concealed carry permits?**

III.  **Whether Plaintiff's Motion for Temporary Restraining Order should be denied, as any injunction mandating the issuance of concealed carry permits to eighteen to twenty-year olds upon request would place third parties in jeopardy of life, limb, and the law, harming the public's interest?**

*Suggested Answer to All: Yes.*

## **ARGUMENTS**

### Standard

"Temporary restraining orders and preliminary injunctions are governed under the same standard." *Williams v. Wingard*, 2016 WL 4701495, at *1 (W.D. Pa. Sept. 8, 2016). Preliminary injunctions are "an **extraordinary** remedy" which should be granted only in limited circumstances. *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994), *cert denied,* 514 U.S. 1103 (1995) (emphasis added).

When considering whether a preliminary injunction should be issued, a court must weigh: (1) the likelihood of the moving party's success on the merits; (2) whether irreparable harm will result from a denial of the relief; (3) the prejudice to the non-moving party if the injunction is granted, and (4) whether the injunction serves the public's interest. *Ortho Pharmaceutical Corp. v. Amgen*, *Inc.*, 882 F.2d 812-13 (3d Cir. 1989).

Thus, Plaintiffs must produce "evidence sufficient to convince the trial judge that all four factors favor preliminary relief." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.3d 187, 192 (3d Cir. 1990). Moreover, if Plaintiffs fail to meet either of the first two threshold factors, the Court *may not* grant the requested relief. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

4

Plaintiffs can neither demonstrate a likelihood of success on the merits of their underlying case nor that they would suffer irreparable harm if their requested relief is not granted. Thus, their motion cannot succeed. Moreover, even if the Court determines Plaintiffs have met this threshold showing, they cannot demonstrate that an injunction allowing eighteen to twenty year-olds to obtain concealed carry permits upon request serves the public's interest.

I.   **Plaintiffs' Motion for Temporary Restraining Order should be denied, because Plaintiffs cannot establish a likelihood of success on the merits of their underlying case.**

A. Commissioner Paris does not issue concealed carry permits.

Initially, Plaintiffs' motion should be denied for one reason: the Commissioner—this case's only defendant—has *no statutory authority* to issue concealed-carry licenses to *any* Pennsylvanian, regardless of their age. The Pennsylvania General Assembly exclusively vested *county sheriffs* with that authority.[1] 18 Pa.C.S. § 6109(b), (d), (g), (i); *see also PSP v. McPherson*, 831 A.2d 800, 801-05 (Pa. Cmwlth. 2003) (discussing the respective roles of county sheriffs and the State Police, stating "[t]he decision to issue a license is solely for the sheriff"); *Caba v. Weaknecht*, 64 A.3d 39, 42 (Pa. Cmwlth. 2013) (stating, in suit against a county sheriff, "[e]ach county of the Commonwealth has its own licensing authority" and that "the county sheriff is the licensing authority under the

---

[1] In Cities of the First Class, the issuing authority is the chief of police of that city. 18 Pa. C.S. 6109(b).

Act"). The State Police does not manage or control the local law enforcement agencies that issue licenses. Therefore, Plaintiffs' suit is premised upon the Commissioner's generalized duty to enforce Pennsylvania law and is barred by the Eleventh Amendment.

The Eleventh Amendment generally bars suits against States in federal court without their consent. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 241 (3d Cir. 2010) (citing *Will*, 491 U.S. at 71) (cleaned up). A plaintiff may avoid that bar by naming a state official in a suit for *prospective* declaratory or injunctive relief to prevent a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 157 (1908). But the action cannot simply seek to make the official a "representative of the state," thereby making the state a party. *Id.* Instead, the official must have sufficient connection with the enforcement of the challenged provision. *Id.*

That connection cannot be based merely on the official's generalized duty to uphold the law. *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 114-15 (3d Cir. 1993) (stating that "Commonwealth Officials' general duty to enforce the laws of the Commonwealth of Pennsylvania," standing alone, "is not a proper predicate

for liability"). Rather, the official must play a fairly direct role in enforcing the challenged statute. *See Ex parte Young*, 209 U.S. at 157; *see also Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (the connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit"); *Doyle v. Hogan*, 1 F.4th 249, 224 (4th Cir. 2021) (". . . the officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges").

While "ministerial" duties can be sufficient to satisfy *Ex parte Young*, the official's duties—whether discretionary or ministerial—must actually affect the plaintiff. *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980). "[T]he inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights[.]" *Id.*[2]

Plaintiffs should not be surprised the Commissioner lacks authority to issue concealed-carry licenses. In *Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122 (2024), plaintiffs—represented by the same counsel here and which included the Second Amendment Foundation—*conceded* the Commissioner lacked any authority to issue concealed-carry licenses in response to the Commissioner's Eleventh Amendment argument in that case. *Compare Lara*, 21-1832, 3d Cir. Dkt.

---

[2] This inquiry "does not include an analysis of the merits of the claim." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002).

ECF No. 23 (Comm'r Response Br. at 14-20) *with* 3d Cir. Dkt ECF No. 38 (Reply Br. at 3-7). The *Lara* plaintiffs thus shifted their focus to Pennsylvania's open-carry laws and sought an injunction barring the Commissioner from arresting 18-to-20-year-olds for *open carry*. *See Lara*, 21-1832, 3d Cir. Dkt. ECF No. 38 (Reply Br. at 24-25). In light of that concession, that was the precise relief the Third Circuit awarded. *Lara*, 91 F.4th at 139-140. Now, however, Plaintiffs rely exclusively on the Third Circuit's decision in *Lara* to support their claim that 18-to-20-year-olds must also be given concealed-carry licenses. (Doc. 8 at ECF 6-9.).

This inconsistency notwithstanding, the Commissioner simply lacks authority to issue concealed-carry licenses, the only relief they now seek.[3]

B. Age restrictions on the issuance of concealed carry permits are permissible under the High Court's decisions in *Bruen* and *Rahimi*.

Plaintiffs' claim that the Second Amendment forbids age restrictions on concealed carry permits is meritless, as the United States Constitution allows for the passage and enforcement of laws limiting individuals' ability to bear arms.

---

[3] Plaintiffs attempt to rely on the State Police's narrow role in performing background checks on concealed-carry licenses, and suggest that 18-to-20-year-olds could obtain licenses if the Commissioner were required to perform background checks on them. (Doc. 8 at ECF 6-14). But this is the tail wagging the dog because Sheriffs and other licensing authorities cannot legally issue licenses to under-21-year-olds. Plaintiffs' effort to obtain concealed-carry licenses in this case is barred by the Eleventh Amendment.

Initially, an act of the General Assembly is presumed valid and will not be declared unconstitutional "unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Interest of J.J.M.*, 265 A.3d 246, 263 (Pa. 2021) (citation omitted; *See also*, *Coyne v. All State Insurance Co.*, 771 F.Supp. 673 (E.D. Pa. 1991) ("This challenge must overcome [t]he strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act. . .Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution. . .") (citations omitted).

Plaintiff's burden is even greater when mounting a facial attack on a statute's constitutionality. Such attacks "test[] a law's constitutionality based on its text alone and do[] not consider the facts or circumstances of a particular case." *Commonwealth v. McCabe*, 265 A.3d 1279, 1290 (Pa. 2021) (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)). "A statute is facially unconstitutional only where there are **no circumstances** under which the statutes would be valid. *Pa. Envtl. Def. Found. v. Commonwealth*, 279 A.3d 1194, 1202 (Pa. 2022) (quoting *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019)) (emphasis added); *See also Khouzam v. Attorney General of the*

*United States*, 549 F.3d 235, 258 (3d Cir. 2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Plaintiffs cannot carry this burden. *First*, Plaintiffs' argument does not demonstrate the law "clearly, palpably, and plainly violates the Constitution," under all conceivable circumstances.

*Second*, the Supreme Court has already recognized that laws regulating bearing arms, including the carrying of concealed arms, are presumptively lawful. The right to keep and bear arms is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Accordingly, the right to bear arms does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. As the High Court explained, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places. . ." *Id.* The Court described these longstanding restrictions as "presumptively lawful," and emphasized the list was not exhaustive. *Heller*, 561 U.S. at 627 n.26.

Two years later, the High Court reiterated: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as. . . 'laws forbidding the carrying of firearms in sensitive places such as schools and

10

government buildings. . .'. . . .We repeat those assurances here." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010).

In *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the Court outlined a history-based analysis for challenges to firearms restrictions. *First*, a plaintiff must show "the Second Amendment's plain text covers an individual's conduct. . ." *Id.* at 17. *Second*, if a plaintiff makes this showing, the government must justify its regulation as "consistent with this Nation's historical tradition of firearm regulation." *Id.* However, the Court did not overturn these previous decisions in *Heller* or *McDonald*, nor its reasoning that, ". . . commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 544 U.S. at 626 (2008).

Likewise, the *Bruen* Court emphasized it was ruling on a single type of regulation; the Court was not disallowing longstanding or common firearm regulations. *See Bruen*, 587 U.S. at 30; *Id.* at 81 (Kavanaugh, J., concurring); *See also*, concurrence of Alito, J. at 72 ("Our holding decides nothing about who may lawfully possess a firearm. . . Nor have we disturbed anything that we said in *Heller* or *McDonald*. . .about restrictions that may be imposed on the . . . carrying of guns.") "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id.* at 80 (Kavanuagh, J., concurring) (quoting *Heller*, 554 U.S. at

636.). Justice Alito specifically emphasized that *Bruen* did not invalidate existing age restrictions and highlighted that federal law bars the sale of handguns to under-21-year-olds. 597 U.S. at 73 (Alito, J., concurring).

The Court also made clear that "[s]tates could lawfully eliminate one kind of public  carry so long as they left open the option to carry openly." *Bruen*, 597 U.S. at 59.

Yet, post-*Bruen*, a number of courts "misunderstood the methodology" of the High Court's Second Amendment cases, believing that all modern regulations had to be "identical to ones that could be found in 1791." *United States v. Rahimi*, 602 U.S. ___(2024) (slip op. at 7). In *Rahimi*, the High Court expressly rejected that approach and clarified that "the appropriate analysis is whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at ___ (slip op. at 7) (citing *Bruen*, 597 U.S. at 26-31); *see also I60d.* (Barrett, J., concurring) (slip op. at 4) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold."). A regulation need not be a "dead ringer" or a "historical twin" to survive Second Amendment scrutiny. *Rahimi*, 602 U.S. at ___ (slip op. at 8). Ultimately, the High Court held that full disarmament of those who represent a danger to the public is consistent with the history of the Second Amendment.

Plaintiffs here invite this court to commit the same methodological misstep as the Fifth Circuit in *Rahimi*. It should decline to do so.

1. History teaches that the Second Amendment was never intended to prevent States from regulating the ability of citizens to bear arms, including banning concealed carry.

Restrictions on 18-to-20-year-olds ability to concealed carry are consistent with the historical tradition of firearms regulation. *Bruen* "requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Bruen*, 597 U.S. at 30. Accordingly, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* The key metric is "first, whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." *Id.* at 29.

Moreover, as reiterated in *Rahimi*, "[w]hy and how the regulation burdens the right are central to this inquiry. . . if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons will fall within a permissible category of regulations." *Rahimi*, 602 U.S. ___ (slip op. at 7) citing *Bruen*, 597 U.S. at 29-30.

a. <u>States and municipalities during the founding era routinely regulated the bearing of arms.</u>

When diving into the historical record, this Court need not work from a blank slate. "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting); *see also Lara v. Commissioner Pa. State Police*, 97 F.4th 156, 163 (3d Cir. 2024) (Krause, J., dissenting from the denial of en banc). Federal district courts have thus found "copious sources discussing the historical basis of laws" curtailing individuals' rights to bear arms by complete disarmament based on membership in a class deemed "'dangerous' to society." *United States v. Gould*, 672 F.Supp.3d 167, 183 (S.D.W.Va. 2023) (citing Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA. L. REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century. . . have excluded *infants*, idiots, lunatics and felons [from possessing firearms].")) (emphasis added); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 200 (5th Cir.2012) (identifying classes of individuals perceived to be dangerous and disarmed during the colonial era).

If such infringements eliminating the right to keep and bear arms of those not yet of age were permissible in the eighteenth century, lesser infringements,

such as allowing them to open carry but forbidding them from engaging in concealed carry must be acceptable.

b.  <u>States and municipalities also routinely regulated the ability to bear firearms during the mid-nineteenth century.[4]</u>

Governments in the mid-nineteenth century also freely restricted practices in "bearing" arms, including outright banning the concealed carry of firearms. *See Rahimi*, at (Slip op. 6), citing *Heller*, 554 US. at 626 (noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues (citations omitted)).

For example, the Supreme Court of Louisiana upheld a concealed carry ban in *State v. Chandler*, 5 La. Ann. 489 (1850), and held that open carry of firearms was the guaranteed right. Joseph S. Greenlee, *Concealed Carry and the Right to Bear Arms*, 20 FEDSOCR 32, 34 (2019). While *Chandler* was later read as "prohibiting only *a particular mode* of bearing arms which is found dangerous to the peace of society," it stands for the proposition that "present-day law regulating

---

[4] Commissioner Paris recognizes that in *Lara v. Commissioner*, 91 F.4th 122, 134 (3d Cir. 2024), the Third Circuit has held, in part, that the relevant time period to look to for historical analogues is the Founding Era, circa 1791, not the "Second Founding" during the mid-nineteenth century. However, Defendant advances this line of argument in good faith and in the interest of preservation of all arguments, given the ongoing scholarly debate regarding the persuasive authority of the respective "Foundings" and their laws.

open carry but allowing concealed carry" or vice versa could "serve the same purpose". *Id.* at 35.

Additionally, in *State v. Reid*, 1 Ala. 612, 616 (1840), the Alabama's supreme court upheld the state's concealed carry ban, holding that the legislature could "enact laws in regard to the manner in which arms shall be borne. . . as may be dictated by the *safety of the people* and the advancement of public morals." *Id.* at 34. Alabama's High Court reasoned:

> A statute which, under the pretence of regulating, amounts to a destruction of the right. . . would be unconstitutional. But a law which is intended merely to promote personal security and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons, in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution.

*Id.* at 34, citing *Reid*, 1 Ala. at 616-617.

As Greenlee explains, "[i]n other words, a state may regulate the manner which arms can be carried if it promotes public safety and still allows the carrier to defend herself." *Id.* at 34.

Georgia's supreme court likewise upheld the state's concealed carry prohibition, while striking down a restriction on Georgian's ability to open carry. *Id.* at 34-35, citing *Nunn v. State*, 1 Ga. 243 (1846). The Court reasoned that the concealed carry ban was "valid, inasmuch as it does not deprive the citizen of his

natural right of self-defence", recognizing that open carry was still available to Georgians. *Id.*

Finally, the Tennessee Supreme Court recognized that "a general carry 'prohibition is too broad,'" but held, "'[i]f the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace and the protection and safety of the community from lawless violence.'" *Id.* at 35, citing *Andrews v. State*, 50 Tenn. 165, 187-88 (1871).

c.  These historical examples impose a comparable burden to modern ordinances, and are comparably justified.

Whether a firearms regulation is consistent with the Second Amendment also requires courts to consider whether modern and historical regulations impose a "comparable burden" that is "comparably justified." *Bruen*, 597 U.S. 1, 3 (2022). As then-Circuit Judge Amy Coney Barrett observed, "[h]istory is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting). Here, history and common sense are likewise entwined: jurisdictions have long regulated citizens' right to bear arms.

The historical laws discussed above, and the Commonwealth's concealed carry limits regulate the same type of activity: the unrestricted carrying of arms in a

manner encouraging a threat to peace. *See Lara v. Commissioner of State Police*, 97 F.4th 156, 156-66 (Krause, J., dissenting from sur denial of rehearing *en banc*.) Their objective is clear: the reduction of violence and the promotion of citizens' safety paramount concerns of states' police power.

Additionally, the laws struck down in *Bruen* and *Heller* were outliers. *See Bruen*, 597 U.S. at 13 (comparing New York's "may issue" law to the "shall carry" laws of 43 States, which the Court presumes are constitutional); *Heller*, 554 U.S. at 629 ("Few laws in the history of our Nation have come close to the severe restrictions of the District's handgun ban"). Three justices also issued concurrences explaining that the High Court was not overturning common gun regulations that enjoy deep roots in our Nation's historical tradition. *Id.* at 2162 (Kavanaugh, J., concurring with Robert, C.J., joining); *Id.* at 2157 (Alito, J., concurring).

Unlike the laws in *Bruen* and *Heller*, restrictions on concealed carry without permitting, and age restrictions on concealed carry, including permitless concealed carry, are widespread. Twenty-one states require a permit to carry concealed firearms. *See* https://everytownresearch.org/rankings/law/concealed-carry-permit-required/. Additionally, 18 of the twenty-nine states that allow permitless concealed carry require the individual to be at least twenty-one, with some allowing military members to concealed carry at eighteen. *See*

18

https://www.usconcealedcarry.com/resources/terminology/types-of-concealed-carry-licensurepermitting-policies/unrestricted/.

### II.  Plaintiffs cannot demonstrate they would suffer an irreparable harm if the Court allows the continued enforcement of this Commonwealth's laws regulating the issuance of concealed carry permits.

Plaintiffs cannot demonstrate they would suffer an irreparable harm if this Court does not issue a preliminary injunction. While a movant seeking a preliminary injunction must demonstrate that he is likely to suffer irreparable harm if an injunction is not granted, *Ferring Pharm.*, *Inc.*, *v. Watson Pharm. Inc.,* 765 F.3d 205, 217 (3d Cir. 2014), *holding modified by Reilly v. City of Harrsiburg,* 858 F.3d 173 (3d Cir. 2017), the "requisite feared injury or harm **must be irreparable not merely serious or substantial**." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977) (emphasis added).

Accordingly, Plaintiffs must also show that the "potential harm . . . cannot be redressed by a legal or equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

Plaintiffs contend that no additional showing must be made because "deprivation of a constitutional right is involved", namely the alleged infringement

of Plaintiffs' Second Amendment right to "bear arms in public for self-defense"(Doc. 8 at ECF 22, quoting 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995); *New York State Pistol and Rifle Association v. Bruen*, 597 U.S. 1, 6 (2022), quoting *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010).

Plaintiffs' argument is unavailing. It presumes an unlawful deprivation has occurred. Defendant agrees with Plaintiff's uncontroversial claim, and, more importantly, the High Court's analysis, that "the right to bear arms in public for self-defense is not 'a second-class right. . .'" *Bruen*, 597 U.S. at 6, quoting *McDonald*, 561 U.S. at 780.

However, Plaintiffs' right to bear arms, as they note, is not infringed,since Plaintiffs can openly carry across this Commonwealth, with the exception of Philadelphia. *See* Doc. 8 n. 6, *citing Commonwealth v. Hawkins*, 547 Pa. 652, 657, n. 4 (1997). Plaintiffs, accordingly, take aim at this Commonwealth's laws regulating the transport of firearms, attempting to support their facial attack on this Commonwealth's age restrictions on the issuance of concealed carry permits. Plaintiffs claim that without concealed carry permitting, they would not be able to circumvent these regulations.

Yet, the fundamental question is whether Plaintiffs have suffered any unlawful abridgement of their right to carry. They still may open carry. Thus they cannot demonstrate they have sustained an irreparable harm.

Additionally, Plaintiffs may still receive relief if they succeed in their underlying claim. Thus, here, a finding of irreparable harm is heavily disfavored.

Therefore, Plaintiffs cannot demonstrate they are likely to suffer irreparable harm. Since Plaintiffs have failed to establish either of the two threshold elements required for a preliminary injunction, the Court must deny Plaintiffs' requested relief. Moreover, issuing a temporary restraining order or preliminary injunction preventing the enforcement of the Commonwealth's public safety laws would harm the public's interest.

## III. Plaintiff's Motion for Temporary Restraining Order should be denied, as any injunction mandating the issuance of concealed carry permits to eighteen to twenty-year olds upon request would place third parties in jeopardy of life, limb, and the law, harming the public's interest.

Plaintiffs must also demonstrate that the issuance of a temporary restraining order or preliminary injunction serves the public's interest. *Ortho Pharmaceutical Corp. v. Amgen*, *Inc*., 882 F.2d 812-13 (3d Cir. 1989). While Plaintiffs argue "the enforcement of an unconstitutional law vindicates no public interest," *K.A. ex rel. Ayers v. Pocono Valley Mountain School Dist.*, 710 F.3d 99, 114 (3d Cir. 2013),

21

Plaintiffs again presume the permitting regulations' unconstitutionality, and that they have accordingly demonstrated a likelihood of success on the merits and irreparable injury. *See* Doc. 8 at 23, citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017). For the reasons explained *supra*, they have not.

Moreover, the public's interest cautions against granting Plaintiffs' requested relief. Data demonstrates that in 2022, permitless concealed carry states experienced "27 percent more deaths and injuries in road rage incidents involving a gun than states that required a permit but did not give law enforcement broad authority to deny an application"; "[s]tates that have weakened their firearm permitting system have experienced a 13-15 percent increase in violent crime rates" and "[i]n a national survey, 39 percent of firearms owners reported they never received formal firearms training." *See*

*https://www.everytown.org/solutions/strong-standards-for-carrying-concealed-guns-in-public/*. Additionally, "a robust body of academic literature shows that the human brain continues to develop well past the age of 21, particularly in areas that may alter a person's likelihood of involvement in violence."

https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/. Thus, allowing individuals eighteen to twenty to concealed carry substantially increases risk to society and themselves.

Individuals similarly situated to Plaintiffs will also rely on any injunction issued by this Court and seek a concealed carry permit. However, when the Commonwealth's laws and regulations are inevitably held constitutional, those individuals will have to conform to those safety measures and face potential prosecution if they fail to cease carrying concealed firearms, resulting in confusion and mischief.

Finally, any attempt to unwind or retract these permits will inevitably place local law enforcement in potentially dangerous situations, taxing their materiel and manpower.

## **CONCLUSION**

This Honorable Court cannot grant Plaintiffs' requested relief.

Plaintiffs cannot establish a likelihood of success on the merits. Commissioner Paris is not responsible for the issuance of concealed carry permits, and the firearms laws Plaintiffs attack are constitutional, comporting with our nation's history and tradition of firearms regulation. Likewise, Plaintiffs cannot establish they have or will suffer an irreparable harm, as no constitutional violation has occurred. Finally, Plaintiffs cannot demonstrate that a preliminary injunction or temporary restraining order would serve the public's interest, as it would place third parties in jeopardy of life, limb, and the law. Their Motion must be denied.

Respectfully submitted,

**MICHELLE A. HENRY**
**Attorney General**

By:   *s/ ERICH T. GREINER*
          **ERICH T. GREINER**
          **Deputy Attorney General**
**Office of Attorney General**      **Attorney ID 331601**
**15ᵗʰ Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 783-6301**      **NICOLE R. DITOMO**
          **Chief Deputy Attorney General**
**egreiner@attorneygeneral.gov**    **Civil Litigation Section**

**Date: July 8, 2024**      **Counsel for Defendant**

24

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAYLOR BROWN. SHAWN** | **:** | |
| **PALMER, MAX NESS,** *and* **SECOND** | **:** | |
| **AMENDMENT FOUNDATION,** | **:** | |
| **Plaintiffs** | **:** | |
| | **:** | **Civil Action No. 1:24-CV-1015** |
| **v.** | **:** | **Judge Conner** |
| | **:** | |
| **COL. CHRISTOPHER PARIS,** | **:** | |
| Commissioner of Pennsylvania State | **:** | |
| Police | **:** | |
| **Defendant** | **:** | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Erich T. Greiner, Deputy Attorney General, hereby certify that the

foregoing Brief complies with the Content and Length Requirements described in

L.R. 7.8, and further certify, through reliance upon the word count feature of the

software used to prepare this brief, that it is comprised of 23 pages and 4,939

words, excluding cover page, tables of contents and authorities, footnotes and

signature blocks.

*/s/ Erich T. Greiner*
ERICH T. GREINER
**Deputy Attorney General**

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAYLOR BROWN. SHAWN** | **:** | |
| **PALMER, MAX NESS,** *and* **SECOND** | **:** | |
| **AMENDMENT FOUNDATION,** | **:** | |
| **Plaintiffs** | **:** | |
| | **:** | **Civil Action No. 1:24-CV-1015** |
| **v.** | **:** | **Judge Conner** |
| | **:** | |
| **COL. CHRISTOPHER PARIS,** | **:** | |
| Commissioner of Pennsylvania State | **:** | |
| Police | **:** | |
| **Defendant** | **:** | |

## CERTIFICATE OF SERVICE

I, Erich T. Greiner, Deputy Attorney General for the Commonwealth of

Pennsylvania, Office of Attorney General, hereby certify that on July 8, 2024, I

caused to be served a true and correct copy of the foregoing document titled *Brief*

*of Col. Christopher Paris in Opposition to Plaintiff's Motion for Temporary*

*Restraining Order and Preliminary Injunction* to the following:

**VIA ECF:**

**Joshua Prince, Esq.**
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
436 Jefferson Avenue
*Counsel for Plaintiffs*

**Adam Kraut, Esq.**
Second Amendment Foundation
12500 N.E. Tenth Place
Bellevue, WA 98005
*Counsel for Plaintiffs*

 *s/ Erich T. Greiner*
**ERICH T. GREINER**
Deputy Attorney General