

COMMONWEALTH OF PENNSYLVANIA
### OFFICE OF Attorney General

**MICHELLE A. HENRY**
ATTORNEY GENERAL

July 17, 2024

Civil Litigation Section
Strawberry Square, 15th Floor
Harrisburg, PA 17120
717-783-6301
egreiner@attorneygeneral.gov

**VIA ECF**
Honorable Christopher C. Conner
Sylvia H. Rambo
United States Courthouse
1501 North 6th Street
Harrisburg, PA 17102

      Re:    *Taylor Brown, et al. v. Col. Christopher Paris*
              Docket No. 1:24-CV-1015

Dear Judge Conner,

In accordance with the Court's request that the parties in this matter provide notice of relevant, new case law, Col. Christopher Paris, through undersigned counsel, notifies this Court of two cases which have been handed down since this Court's hearing.

The first case, *Delaware State Sportsmen's Assn., Inc., et al. v. Delaware Dep't of Safety & Homeland Security*, No.23-1633 is a binding, precedential Third Circuit case, in which the Circuit Court clarified the standard for issuance of a preliminary injunction in Second Amendment cases. The Court clarified that a preliminary injunction remains an *extraordinary* remedy, intended to ensure the *status quo* and preserve the possibility of a remedy for plaintiffs following the litigation of the underlying matter to completion. *Delaware State Sportsmen's Assn.*, No. 23-1633 (3d Cir. 2024) (Slip Op. at 7, 10-13, 14-15). There, as here, the plaintiffs attempted to focus on the merits of their claim only, arguing that any constitutional harm necessarily entitles a party to a preliminary injunction. The Third Circuit roundly rejected this effort to collapse "the four [preliminary injunction] factors into one," emphasizing that a likelihood of success on the merits is not enough. Slip Op. at 17.

The Court also chastised courts that have "strayed from" the primary purpose of a preliminary injunction: to maintain the status quo and keep the case alive as litigation proceeds. Slip Op. at 14-15. Thus, mere "harm prevention" is not enough, by itself, to warrant a preliminary injunction. *Id.* Rather *case preservation* is the primary function. *Id.* at 15-16. There, as here, the plaintiffs failed to demonstrate a time sensitive need for the guns in question, or "harms beyond ones that can be

cured after final judgement." Slip Op. at 23. And, like the plaintiffs in the Third Circuit, Plaintiffs here will not lose their ability to litigate their claim if a preliminary injunction is not issued.

The Third Circuit also clarified that "harm to the opposing party and the public interest, 'merge when the Government is the opposing party", and that there is "'always a public interest in prompt execution' of the laws." (*Id.*, Slip Op. at 20-22, 24 (quoting *Nken v. Holder*, 556 U.S. 418, 434-36 (2009)). "This is doubly true when federal courts are asked to block states from enforcing their laws" as it implicates principles of federalism. Slip Op. at 24-25. Granting the temporary injunction here would cause significant harm to the ability of the Commonwealth to enforce these laws, and by extesnsion would cause undue harm to the larger public as prior briefed by the Commissioner. (Doc. 12 at ECF 27-28), and as explained by the Third Circuit in its Opinion *Delaware State Sportsmen's Assn.*, at Slip Op. 24.) Plaintiffs' motion must be denied.

The second case, of which Plaintiffs have already notified the Court, is *Kristin Worth, et al. v. Bob Jacobson*, No. 23 2248 (8th Cir. 2024). This case involved a challenge to Minnesota's permitting laws which prevented otherwise qualified 18 to 20 year-olds from obtaining carry permits. The Eighth Circuit Court of Appeals upheld the trial court's finding that the restriction was unconstitutional, applying the *Bruen* two-step analysis. Upon its review, the Eighth Circuit held that eighteen to twenty year-olds are part of "the People" covered by the Second Amendment's protections, and that the regulations were not in keeping with the history and tradition of firearm regulation, as the examples the state brought to bear were not analogous. *(See, generally*, *Id.)*

In contrast to *Delaware State Sportsmen's Assn.*, *Worth* is not binding upon this Court. Additionally, critical distinctions between the facts in *Worth* and this case exist, such that *Worth* is of limited persuasive value to this matter.

Initially, *Worth* was decided following summary judgment, with the benefit of a complete record, including expert historians. It sheds no light on how the Court should balance the equities in accordance with *Delaware State Sportsmen's Assn.*

Moreover, it cannot be ignored that Minnesota's regulatory scheme is fundamentally different from Pennsylvania's. As the Eighth Circuit notes in the opening of its Opinion, Minnesota enacted a complete ban on open carry "'in a public place'" by "ordinary people", and required a permit-to-carry. (*Id.* at slip op. 3.) As both parties agreed here, the historical and jurisprudential evidence indicates a state has the authority to completely ban one method of carry or another, so long as either open carry or concealed carry is permitted, meeting the constitutional mandate that citizens be able to *bear* arms. Accordingly, unlike Minnesota's complete foreclosure of the ability to bear arms for eighteen to twenty-year olds, Pennsylvania's permissive open-carry laws, coupled with its permitting law which places *temporary* restrictions on the ability to carry concealed based upon an age classification, are wholly distinguishable.

Moreover, despite disclaiming the means-end analysis proscribed by *Bruen*, the Eighth Circuit seems to engage in such an analysis in discussing whether defendants proffered enough evidence to make a finding of dangerousness based upon membership in the age-based class:

> Assuming that historical regulation of firearm possession can be viewed as an effort to address a risk of dangerousness, this risk does not justify the Carry Ban. Minnesota claims that 18 to 20-year-olds present a danger to the public, but it has failed to support its claim with enough evidence. *See Rahimi*, 2024 WL 3074728, at *9 (upholding a carry ban, the Court repeatedly emphasized that the law at issue "applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another.") (citation omitted). Although we take no position on how high the risk must be or what the evidentiary record needs to show, the answer is surely more than what Minnesota's general crime statistics say.

*Worth,* at slip op. 19-20.

As previously briefed, and as explained during oral argument, our history and tradition of firearm regulation includes that of complete disarmament of individuals who were, upon the evaluation of the People through their representatives in their respective legislatures, deemed to present unique dangers to the larger public.

 Here, again, the Commissioner reiterates that he does not seek to prevent Plaintiffs from *bearing*, let alone *keeping* arms. Rather, he requests this Court refrain from issuing an injunction which would either prevent him from enforcing constitutional limits on open carry or enable eighteen to twenty year-olds to obtain permits to concealed carry despite the constitutional and duly enacted limits passed by the People of Pennsylvania through their representatives in the Assembly.

Thank you.

Sincerely,

*/s/ Erich T. Greiner, Esq.*
Erich T. Greiner
Atty ID: 331601

Served via ECF:
Counsel for Plaintiffs:
Joshua Prince, Esq.
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888)202-9297 x81114
(610400-4839 (f)

Adam Kraut, Esq.
Second Amendment Foundation
12500 N.E. Tenth Place
Bellvue, WA 98005
(425)454-7012