IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Taylor Brown, et al.<br><br>                      Plaintiffs,<br><br>    v.<br><br>Col. Christopher Paris, in his capacity as Commissioner of the Pennsylvania State Police,<br><br>                      Defendant. | No. 1:24-cv-1015<br><br>Judge Conner<br><br>Electronically Filed Document |

**DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION TO STAY BRIEFING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND FOR A CASE MANAGEMENT ORDER**

    Defendant Col. Christopher Paris files this brief in support of his Motion to Stay Briefing on Plaintiffs' Motion for Summary Judgment, and for a Case Management Order. As explained below, this Court should grant this motion so that Defendant can engage in fact and, potentially, expert discovery, and because a case currently pending before the Third Circuit may resolve some of the questions raised by Plaintiffs' claims.

**I.    Plaintiffs' Allegations**

    A.    <u>Individual Plaintiffs</u>

    Plaintiffs Taylor Brown, Shawn Palmer, and Max Ness (the "Individual Plaintiffs") allege that they are "responsible, peaceable, law-abiding citizen[s] with

1

no history of violent behavior or other conduct that would suggest [they] pose any threat or danger." ECF No. 1 ¶¶ 46, 60, 74. More specifically, they allege that they are not under any indictment; have never been convicted of a felony or misdemeanor crime of domestic violence; have never been convicted of a crime punishable by more than one year; are not fugitives from justice; are not subject to any restraining orders relating to an intimate partner; and are not unlawful users of, or addicted to, any controlled substances. *Id.* ¶¶ 37, 51, 65. They also allege that they have not been adjudicated mental defectives; have not been committed to a mental institution; have not been discharged from the Armed Forces under dishonorable conditions; and have never renounced their citizenship. *Id.*

The Individual Plaintiffs also allege that they own handguns. *Id.* ¶¶ 38, 52, 66. And they allege that they intend and desire to lawfully carry those handguns to, from, at, and on various locations within the Commonwealth, including public streets and property, shooting ranges, friends' homes, and specifically identified places of business. *Id.* ¶¶ 40, 54, 65.

The Individual Plaintiffs, however, allege that they cannot so carry because they are under 21 (though over 18) years of age. *Id.* ¶¶ 37, 42–44, 51, 56–58, 65, 70–72. They allege this prohibition arises from the operation and interplay of three laws, which they allege Defendant "actively enforces" in his role as Commissioner of the Pennsylvania State Police, *id.* ¶¶ 21–23, 25:

- 18 Pa. C.S. § 6106, which (with numerous exceptions) prohibits the carrying of firearms in vehicles, and the carrying of concealed firearms without a license;

- 18 Pa. C.S. § 6108, which (with numerous exceptions) prohibits the carrying of firearms on the public streets and upon public property in Philadelphia without a license; and

- 18 Pa. C.S. § 6109, which requires individuals to be 21 years of age to obtain the license mentioned in Sections 6106 and 6108.

B. The Second Amendment Foundation

Plaintiff the Second Amendment Foundation ("SAF") alleges that it is a "nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington" that "seeks to preserve the effectiveness of the Second Amendment through," *inter alia*, "legal action programs[.]" *Id.* ¶ 24. SAF alleges that it "has over 720,000 members and supporters nationwide," with "thousands of members in Pennsylvania, including" the Individual Plaintiffs and other Pennsylvania residents "between the ages of 18 and 20, who would lawfully carry and lawfully transport firearms for the protection of themselves, loved ones, and others, but for" Defendant's alleged "enforcement" of Sections 6106, 6108, and 6109. *Id.*

II. Procedural History

Plaintiffs initiated this action by filing a two-count Complaint on June 20, 2024. ECF No. 1. Count I of that pleading argues that Sections 6106 and 6108 (which, as noted above, criminalize some unlicensed carrying of firearms) violate

the Second Amendment. Count II, brought in the alternative, argues that Section 6109 (which, as noted above, requires individuals to be 21 years of age to obtain the just-mentioned license) violates the Second Amendment.

Along with the Complaint, Plaintiffs also moved for preliminary injunctive relief—i.e., for an order temporarily enjoining Defendant from enforcing Sections 6106, 6108, and 6109 to the extent those laws prevent the Individual Plaintiffs and those similarly situated from carrying firearms as described above. ECF No. 2. The Court held a hearing on that motion on July 11, 2024. On July 29, 2024, it denied that motion because, *inter alia*, "none of the conduct described in [P]laintiffs' motion implicate[d] 'an urgent need for speedy action to protect' their rights[.]'" ECF No. 20 at 4 (quoting *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024)).

The Court then issued an order scheduling a Case Management Conference for September 26, 2024, and requiring the parties to prepare and submit a Joint Case Management Plan in advance of that conference. ECF No. 21. On August 23, 2024, Plaintiffs noticed their appeal of the Court's July 29, 2024 order.[1] ECF No. 22. A

---

[1] That appeal is docketed at *Brown v. Commissioner*, No. 24-2591 (3d Cir. filed Aug. 26, 2024). On October 23, 2024, the Third Circuit issued an order holding that appeal c.a.v. pending its decision in *Koons v. Attorney General of New Jersey*, Nos. 23-1900 & 23-2043 (3d Cir.).

few days later the Court (without explanation) issued an order cancelling—but not rescheduling—the scheduled Case Management Conference. ECF No. 24.

On October 7, 2024—before any discovery was conducted in this matter; just over three months since the initiation of this action; and just over two months since this Court determined that Plaintiffs had not demonstrated "an urgent need for speedy action to protect their rights"—Plaintiffs moved for summary judgment in their favor on all claims in their Complaint. ECF No. 27. In their supporting brief, ECF No. 28, they relied heavily on the Third Circuit's decision in *Lara v. Commissioner, Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024). Eight days later, on October 15, 2024, the United States Supreme Court vacated that decision. *See Paris v. Lara*, 2024 WL 4486348 (U.S. Oct. 15, 2024).

Defendant now moves to stay briefing on Plaintiffs' Motion for Summary Judgment.

### III. Question Presented

Whether this Court should stay briefing on Plaintiffs' Motion for Summary Judgment and enter a Case Management Order that allows for a reasonable period of fact and expert discovery.

*Suggested Answer: Yes.*

## IV. Argument

This Court should stay briefing on Plaintiffs' Motion for Summary Judgment and enter a Case Management Order that allows for a reasonable period of fact and expert discovery. Defendant has the right to challenge Plaintiffs' standing; needs evidence to make that challenge; and needs discovery to adduce that evidence. And Defendant may wish to present expert testimony in this matter. Additionally, a case pending before the Third Circuit may resolve some of the legal questions presented by Plaintiffs' motion.

### A.    Defendant is entitled to conduct jurisdictional discovery.

First, Defendant should be entitled to conduct discovery on Plaintiff's jurisdictional allegations, and to test the jurisdictional evidence presented by Plaintiffs in support of those allegations.

#### *1.    Jurisdiction is a fact-bound inquiry that can require discovery.*

It is well-established that federal courts are powerless unless they have jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). It is also well-established that for jurisdiction to exist, a plaintiff must have "standing to sue." *Id.* at 102. Standing, in turn, requires (1) an "injury in fact"; (2) "causation—[i.e.,] a fairly traceable connection between the plaintiff's [alleged] injury and the complained-of conduct of the defendant"; and (3) "redressability—[i.e.,] a likelihood that the requested relief will redress the alleged injury." *Id.* at 103.

6

"[T]he party invoking federal jurisdiction"—i.e., the plaintiff—"bears the burden of establishing its existence." *Id.* at 104. Oftentimes the defendant does not challenge the plaintiff's jurisdictional allegations; those allegations are accepted as true; and the court proceeds. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). But "[i]f the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction" and then "determine jurisdiction by weighing the evidence presented by the parties." *Id.* at 177.

As just explained, these pre-merits jurisdictional proceedings require the "weighing [of] ***evidence***." *Id.* (emphasis added). But evidence, of course, is "typically obtained through discovery." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019). For that reason, "[p]arties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for ***thorough*** consideration of the jurisdictional issue." *Shouse v. Nat'l Corrective Grp., Inc.*, 2011 WL 1376403, at *2 (M.D. Pa. Apr. 12, 2011) (emphasis added) (cleaned up).

    2.    *Jurisdictional discovery is required here.*

As just explained, Plaintiffs can only maintain this lawsuit if they can show injury, causation, and redressability. In other words, they must be able to demonstrate that Sections 6106, 6108, and 6109 are actually preventing them from carrying as they wish to carry, and that overturning those laws will actually permit

7

them to carry as they wish. *Cf. Suarez v. Paris*, 2024 WL 3521517, at *4 (M.D. Pa. July 24, 2024) ("In pre-enforcement contexts, the injury-in-fact prong tasks the court to consider whether a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute . . . ." (cleaned up)).

As explained above, Sections 6106 and 6108 make it illegal to carry firearms in certain circumstances without a license, and Section 6109 requires individuals to be 21 years of age to obtain that license. But as also noted above, Section 6106 contains ***numerous*** exceptions to the licensure requirement, which exceptions are incorporated by reference into Section 6108.

Plaintiffs make various allegations regarding when, where, and how they would like to carry their firearms. But many of those allegations appear deliberately crafted to skirt the application of an exception—and thus establish causation & redressability, standing, and, ultimately, jurisdiction. For example, Section 6106 exempts individuals carrying an unloaded firearm "to or from . . . target practice." 18 Pa. C.S. § 6106(b)(4). All three Individual Plaintiffs allege that they wish to carry an unloaded firearm "to or from . . . a range [and] target shooting." ECF No. 1 ¶¶ 40.a; 54.a; & 68.a. But all three Individual Plaintiffs *also* allege that they would like to "stop for a bathroom break[], food, [or] coffee, or . . . pick up or drop off a friend" on that journey. It does not appear that any court has weighed in on whether

an individual is still going "to or from . . . target practice" if they stop for a candy bar on the way. But a court needs factual information about the nature of those frolics and detours to make that determination. *Cf. Commonwealth v. Gunter*, 2024 WL 2048719, at \*\*1, 3 (Pa. Super. Ct. 2024) ("[T]he ***evidence*** did not establish the target practice affirmative defense" where the defendant "left [a] gun show" and "drove around very briefly before returning[.]" (emphasis added)). Defendant, therefore, should be permitted to conduct discovery to obtain that information.[2]

And allegations related to many of the exceptions are entirely missing. For example, Section 6106 entirely exempts law-enforcement officers, federal officers and employees that are authorized to carry a concealed firearm, and individuals licensed by certain other states. 18 Pa. C.S. § 6106(b)(1), (5), (15). None of the three Individual Plaintiffs deny being eligible for these exemptions (and their silence, in light of the detailed nature of their other allegations, seems curious). But if they were eligible, they would not be subject to the license requirement of Sections 6106 and

---

[2] This Court, of course, has already held that Section 6106's prohibition on carrying firearms in vehicles is unconstitutional, and has enjoined its enforcement. *See Suarez v. Paris*, 2024 WL 3521517, at \*15 (M.D. Pa. July 24, 2024). That injunction has been temporarily stayed, but it might otherwise render the jurisdictional allegations mentioned in this paragraph (and all others related to the carrying of firearms in vehicles) irrelevant, and of no help in establishing Plaintiffs' standing. In any event, and for the reasons discussed *infra* in footnote 5, *Suarez*'s holding does not prevent this Court from reconsidering that prohibition's constitutionality anew in this lawsuit if presented with new historical evidence.

6108; would thus lack injury and standing; and so no jurisdiction would exist. Again, Defendant should be permitted to conduct discovery to obtain that information.

Finally, and more fundamentally, Defendant should also be permitted to test all the affirmative jurisdictional statements that are made in the Individual Plaintiffs' affidavits.[3] ECF Nos. 1–3, 1–4, 1–5. In this lawsuit, Plaintiffs seek to completely invalidate a decades-old limitation on the carrying of firearms in this Commonwealth. Yet they have not answered a single interrogatory, responded to a single document request, or sat for a single deposition. Instead, they rest entirely on a few pages of (often-duplicative and largely formulaic, but undoubtedly carefully crafted) typed-out assertions. This hardly seems sufficient to satisfactorily prove that Plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962).[4]

---

[3] These statements essentially mirror the jurisdictional allegations from the Complaint.

[4] Defendant should also be permitted to test SAF's jurisdictional assertion that it has "thousands of members and supporters in Pennsylvania [in addition to the Individual Plaintiffs] who are residents of the Commonwealth of Pennsylvania, between the ages of 18 and 20, who would lawfully carry and lawfully transport firearms . . . but for Defendant's [alleged] enforcement of the challenged laws." ECF No. 1–7 ¶ 5. *Cf. Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue

B.     Defendant may wish to conduct expert discovery.

Second, Defendant should be entitled to present expert testimony regarding the history of firearms limitations applicable to individuals under the age of 21, if he determines such expert testimony is necessary.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a two-step test for courts to use when determining whether firearms regulations violate the Second Amendment. The court should first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. Second, if it does, "the government must [then] demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

The *Bruen* decision resulted in a spate of litigation challenging firearms regulations. In some of those cases, expert testimony has been used to explore "this Nation's historical tradition of firearm regulation" at *Bruen*'s second step. *Id.* In *Oregon Firearms Federation v. Kotek*, 682 F. Supp. 3d 874, 900 (D. Or. 2023), for example, both the plaintiff and the government-defendant relied on historical experts. *See id.* at 899–901; *see also id.* at 901 (holding that the government-

---

in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

defendant's "neutral historical experts [were] significantly more credible—and entitled to more weight—than" the plaintiff's expert, who "lack[ed] background and training as a historian"; "ha[d] both professional and personal ties to pro-gun groups and the firearms industry"; had "received numerous awards from pro-gun advocacy groups"; had "co-founded a research center that advocate[d] for the firearms industry and denounce[d] gun regulation"; and had "a strong financial interest in the success of the firearms industry" through her husband, who "spent decades working for gun dealers and gun manufacturers" and "own[ed] over one million dollars in stock in Ammo, Inc.").

Defendant may wish to utilize similar expert testimony. So in addition to permitting a period of jurisdictional fact discovery, this Court should also permit sufficient time for Defendant to fully evaluate and ascertain the need for expert testimony; to locate and evaluate appropriate expert(s); and to prepare the necessary disclosure(s) associated with such expert(s).

C.     The Third Circuit may soon resolve some of the issues in this case.

Third, and finally, a stay of Plaintiffs' Motion for Summary Judgment is warranted because a case currently pending before the Third Circuit may resolve some of the questions raised by Plaintiffs' claims.

As noted above, *Bruen* requires courts resolving constitutional challenges to firearms regulations to determine whether "the Second Amendment's plain text

covers an individual's conduct," and, if so, to determine whether "the government [has] demonstrate[d] that the regulation is consistent with this Nation's historical tradition of firearm regulation. 597 U.S. at 24. In *Lara v. Commissioner, Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024), Plaintiffs challenged Pennsylvania's ban on 18-to-20 year olds carrying firearms outside their homes during a state of emergency. *Id.* at 126. Following the two-step analytical path set by *Bruen*, the Third Circuit first determined that "18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Id.* at 132. It then determined that the government had not "borne [its] burden of proving that evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights[.]" *Id.* at 137.

Here, Plaintiffs' brief in support of their pending Motion for Summary Judgment almost exclusively (but quite understandably) relies on *Lara*, at both prongs of its *Bruen* analysis. *See* ECF No. 28 at 16, 20. But eight days after that brief was filed, the United States Supreme Court vacated *Lara* and remanded the case back to the Third Circuit for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024) (applying *Bruen* to a statute that prohibited the possession of firearms by individuals subject to a domestic violence restraining order, and concluding that the statute was facially constitutional).

It makes little sense for the parties to attempt to brief an issue that is currently before the Third Circuit. And, of course, this Court will likely not wish to rule on the validity of laws restricting firearms usage by 18-to-20-year-olds while that same issue is before the Third Circuit. Doing so, after all, risks issuing a ruling that conflicts with yet-to-be-issued, but possibly binding,[5] authority. This is yet another reason why a stay is appropriate.

## V. Conclusion

For those reasons, this Court should grant Defendants' motion, stay briefing on Plaintiffs' Motion for Summary Judgment, and issue a Case Management Order that gives Defendant a reasonable period of time to conduct fact and potentially expert discovery.

---

[5] To be clear, Defendants do not argue or concede that the outcome of *Lara* will necessarily control the outcome of this case. In particular, a ruling at *Bruen* step two that the *Lara* defendant did not "carry [its] **burden**" of identifying relevant "historical ***evidence***," 597 U.S. at 24 (emphasis added), will not necessarily bind this Court. After all, *Bruen* made it clear that courts must "decide [Second Amendment] case[s] based on the historical record ***compiled by the parties***." 597 U.S. at 25 n.6 (emphasis added). And Defendant here—especially with the assistance of an expert historian or two, *see supra*—may be able to adduce some historical analogues missed in *Lara*. If he does, this Court will be required to consider them at *Bruen* step two. (Indeed, if it were otherwise, an enterprising plaintiff could locate—or even collude with—a firearms-friendly government defendant to create bad case law that binds all future parties.) Of course, if the *Lara* post-remand decision holds that the historical record ***is*** sufficient, Defendant here may simply point to that same exact record and ask the Court to treat that holding as *res judicata*.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MICHELLE A. HENRY<br>Attorney General |
|  | By: */s/ Jacob Frasch* |
| Office of Attorney General<br>15th Floor, Strawberry Square<br>Harrisburg, PA 17120<br>(717) 783-7560<br>jfrasch@attorneygeneral.gov | Jacob Frasch<br>Deputy Attorney General<br>Attorney ID PA No. 328362<br><br>Nicole R. DiTomo<br>Chief Deputy Attorney General<br>Civil Litigation Section |
| Date: December 12, 2024 | Counsel for Defendant Col. Christopher Paris |

15

## **CERTIFICATE OF NON-CONCURRENCE**

Pursuant to Local Rule 7.1, I certify that I sought concurrence in the foregoing motion from counsel for Plaintiffs, but concurrence was denied.

*/s/ Jacob Frasch*
Jacob Frasch
Deputy Attorney General

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 4.2, I certify that a true and correct copy of the foregoing was served on the following individuals via the indicated means on December 12, 2024:

VIA ELECTRONIC FILING

| | |
|---|---|
| Adam J. Kraut, Esq.<br>Second Amendment Foundation<br>12500 N.E. Tenth Place<br>Bellevue, WA 98005<br>akraut@saf.org<br>*Counsel for Plaintiffs* | Joshua G. Prince, Esq.<br>Prince Law Offices PC<br>646 Lenape Road<br>Bectelsville, PA 19505<br>joshua@princelaw.com<br>*Counsel for Plaintiffs* |

*/s/ Jacob Frasch*
Jacob Frasch
Deputy Attorney General