**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Taylor Brown, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Col. Christopher Paris, in his capacity as Commissioner of the Pennsylvania State Police,<br><br>Defendant. | No. 1:24-cv-1015<br><br>Judge Julia K. Munley<br><br>Electronically Filed Document |

# DEFENDANT'S BRIEF SUPPORTING HIS MOTION FOR SUMMARY JUDGMENT AND OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**I. Statement of Facts** .......... 1

**II. Procedural History** .......... 1

**III. Questions Presented** .......... 2

**IV. Argument** .......... 3

1. This Court lacks jurisdiction over Plaintiffs' claims. .......... 3

   *a. All named Plaintiffs and identified SAF members are now 21, and so their claims are moot* .......... 3

   *b. Plaintiffs' nominal-damages request does not prevent mootness* .......... 4

   *c. Plaintiffs cannot demonstrate that the capable-of-repetition-yet-evading-review exception to mootness applies* .......... 5

   *d. If SAF attempts to identify additional age-appropriate members, this Court should reopen discovery* .......... 11

2. The concealed-carry provision is constitutional .......... 13

3. This Court should sever the challenge to the Philadelphia-carry provision and transfer it to the Eastern District of Pennsylvania. .......... 14

4. The Philadelphia-carry provision is constitutional .......... 14

5. The vehicle-carry provision is constitutional. .......... 18

**V. Conclusion** .......... 21

# TABLE OF AUTHORITIES

## Cases

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997)........................................ 4

*Baker v. Carr*, 369 U.S. 186 (1962)................................................................... 11

*Barris v. Stroud Twp.*, 310 A.3d 175 (Pa. 2024) ........................................... 15, 20

*Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226 (3d Cir. 2021) ......... 5, 6

*Commonwealth v. Gunter*, 2024 WL 2048719 (Pa. Super. 2024)........................ 12

*Commonwealth v. Walker*, 280 A.2d 590 (Pa. Super. 1971)................................ 19

*Commonwealth v. Williams*, 341 A.3d 144 (Pa. Super. 2025) ............................. 19

*Craig v. Boren*, 429 U.S. 190 (1976)................................................................... 4

*D.C. v. Heller*, 554 U.S. 570 (2008) ................................................................. 19

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)......................................................... 6

*Fox v. Bd. of Trs. of State Univ. of New York*, 42 F.3d 135 (2d Cir. 1994)............ 5

*Gulden v. Exxon Mobil Corp.*, 119 F.4th 299 (3d Cir. 2024)................................ 6

*Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, 157 F.4th 834 (6th Cir. 2025)..... 6

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322 (4th Cir. 2021).............................................................................................. 3

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977)............... 3

*Koons v. Att'y Gen. New Jersey*, 156 F.4th 210 (3d Cir. 2025) ....................... 2, 18

*Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428 (3d Cir. 2025) ............ ............................................................................................. 9–11, 16

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990)................................................ 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................................. 12

*Loftus v. Se. Pennsylvania Transp. Auth.*, 843 F. Supp. 981 (E.D. Pa. 1994)...... 10

*McKinley v. Kaplan*, 177 F.3d 1253 (11th Cir. 1999) ........................................... 5

*Michigan v. Long*, 463 U.S. 1032 (1983) ............................................................ 19

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ... 14, 15, 16

*Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024) .............. 3–4

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)............................................ 5

*Spencer v. Kemna*, 523 U.S. 1 (1998)................................................................. 10

*State v. Chandler*, 5 La. Ann. 489 (1850)............................................................ 19

*Suarez v. Paris*, 741 F. Supp. 3d 237 (M.D. Pa. 2024) ........................ 8, 12, 13, 14

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................. 9

*United States v. Juv. Male*, 564 U.S. 932 (2011).................................................. 6

*United States v. Rahimi*, 602 U.S. 680 (2024)................................... 16, 17, 18, 19

*United States v. Sanchez-Gomez*, 584 U.S. 381 (2018)......................................... 6

*Uzuegbunam v. Preczews*ki, 781 F. App'x 824 (11th Cir. 2019)........................... 4

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)................................................. 4

**Statutes and Regulations**

Fed. R. Civ. P. 25 ................................................................................................ 1

Fed. R. Civ. P. 56 .............................................................................................. 11

18 Pa. C.S. § 6106.......................................................................................*passim*

18 Pa. C.S. § 6107........................................................................................ 10, 11

18 Pa. C.S. § 6108 ........................................................................ *passim*

18 Pa. C.S. § 6109 ........................................................................ *passim*

53 P.S. § 16514 ........................................................................ 17

Defendant files this brief supporting his Motion for Summary Judgment and opposing the Motion for Summary Judgment filed by Plaintiffs Taylor Brown, Shawn Palmer, Max Ness, and the Second Amendment Foundation ("SAF"), ECF No. 27.

## I. Statement of Facts

For the Court's convenience, Defendant refers to his contemporaneously filed Statement of Undisputed Material Facts.

## II. Procedural History

Plaintiffs commenced the above-captioned by filing the Complaint. ECF No. 1. Defendant has answered the Complaint. ECF No. 18.

The Complaint is the operative pleading. It names one defendant: the Commissioner of the Pennsylvania State Police in his official capacity. ECF No. 1 ¶ 25.[1] It challenges, under the Second Amendment to the United States Constitution, several provisions of Pennsylvania law that, collectively, can prevent 18-to-20-year-olds from carrying concealed firearms, carrying firearms in vehicles,

[1] At the time this case was filed, the Commissioner was Col. Christopher Paris. Currently, Lt. Col. George Bivens is Acting Commissioner. Under Fed. R. Civ. P. 25(d), Bivens has been "automatically substituted as a party" in this case, and Defendant respectfully requests that the Court direct the Clerk to update the docket accordingly.

and carrying firearms on the public streets and upon public property in Philadelphia. *See* 18 Pa. C.S. §§ 6106(a), 6108, and 6109(b).

At the outset of the litigation, Plaintiffs moved for preliminary injunctive relief. ECF No. 2. This Court denied that motion. ECF No. 20.[2] Plaintiffs subsequently moved for summary judgment. ECF No. 27. Defendant now cross moves for summary judgment and responds to Plaintiffs' motion.

## III. Questions Presented

1. Whether this Court lacks jurisdiction over Plaintiffs' claims?

   *Suggested Answer: Yes.*

2. Whether the concealed-carry provision is constitutional?

   *Suggested Answer: Yes*

3. Whether this Court should sever the Philadelphia-carry challenge and transfer it to the Eastern District of Pennsylvania?

   *Suggested Answer: Yes*

---

[2] Plaintiffs appealed this ruling to the Third Circuit. ECF No. 22. *See Brown v. Commissioner of Pennsylvania State Police*, No. 24–2591 (3d Cir.). The Third Circuit consolidated that appeal with the three pending appeals in *Suarez v. Commissioner Pennsylvania State Police*, Nos. 24-2395, 24-2436, and 24-2602. C.A. Dkt. 11. The Third Circuit then held those various appeals C.A.V. pending its decision in *Koons v. Attorney General of New Jersey*. C.A. Dkt. 19.

A panel opinion in *Koons* issued last year, *see Koons v. Att'y Gen. New Jersey*, 156 F.4th 210 (3d Cir. 2025), but the Third Circuit agreed to rehear the matter en banc, *Koons v. Att'y Gen. New Jersey*, 162 F.4th 100 (3d Cir. 2025). Oral argument before the Third Court sitting en banc has occurred, but no en banc opinion has yet been issued.

4. Whether the Philadelphia-carry provision is constitutional?

*Suggested Answer: Yes.*

5. Whether the vehicle-carry provision is constitutional?

Suggested Answer: Yes.

## IV. Argument

### 1. This Court lacks jurisdiction over Plaintiffs' claims.

#### *a. All named Plaintiffs and identified SAF members are now 21, and so their claims are moot.*

At the outset, this Court should dismiss this matter in its entirety for lack of jurisdiction because it is undisputed that all named Plaintiffs, and all unnamed-but-identified SAF members on whose behalf SAF has standing to bring this lawsuit,[3] have turned 21. Thus the challenged laws no longer prevent them from obtaining a firearms license, and their claims are moot.[4] Plaintiffs may note that this case was

---

[3] *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

[4] *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322 (4th Cir. 2021) (plaintiff challenged law preventing individuals under 21 years of age from purchasing handguns and handgun ammunition from a federal firearms licensee; plaintiff turned 21 after the Fourth Circuit issued its opinion but before it issued its mandate; Fourth Circuit held that plaintiff's claims thus became moot, so it vacated its own opinion and the district court's opinion, and remanded the matter to the district court with directions to dismiss as moot); *see also Rocky*

stayed for a period of time, but "mootness, however it may have come about, simply deprives [a court] of [its] power to act."[5]

*b. Plaintiffs' nominal-damages request does not prevent mootness.*

Plaintiffs may argue that their request for nominal damages prevents this case from becoming moot.[6] But Plaintiffs sue the Commissioner only in his official capacity, and so they can recover no damages—not even nominal ones—from him.[7]

And Plaintiffs will not be able to amend their Complaint to state a claim against Paris in his individual capacity, because they have not alleged—nor could they plausibly allege—Paris's personal involvement in the denial of their firearms

---

*Mountain Gun Owners v. Polis*, 121 F.4th 96, 107 (10th Cir. 2024); *cf. Craig v. Boren*, 429 U.S. 190 (1976).

[5] *Spencer v. Kemna*, 523 U.S. 1, 18 (1998); *see id.* (rejecting petitioner's argument that "even if his case is moot, that fact should be ignored because it was caused by the dilatory tactics of the state attorney general's office and the delay of the District Court").

[6] *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 282–83 (2021) (a request for nominal damages can prevent a case from becoming moot).

[7] *Cf. Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68–69 (1997) (mootness cannot be overcome by claiming nominal damages against official capacity defendant). Note that the *Uzuegbunam* plaintiffs sued defendants in both their official and individual capacities. *See Uzuegbunam v. Preczewski*, 781 F. App'x 824 (11th Cir. 2019). Before the Supreme Court, the *Uzuegbunam* plaintiffs conceded that they could not recover nominal damages from the defendants in their official capacities. *See* Ex. 5 (Brief for Uzuegbunam) at 45 ("Plaintiffs cannot pursue nominal-damages claims against state defendants in their official capacity under § 1983." (citing *Arizonans for Official English*)). (*Note: All Exhibits referenced in this brief are attached to Defendant's Statement of Undisputed Material Facts.*)

license given that the state police does not issue licenses.[8] *See* 18 Pa. C.S. § 6109(b) (establishing county sheriffs as licensing authorities). Further, even if they could, such a claim would be barred by qualified immunity, as they cannot seriously argue that the unconstitutionality of the challenged laws was clearly established.[9]

*c. Plaintiffs cannot demonstrate that the capable-of-repetition-yet-evading-review exception to mootness applies.*

Plaintiffs may also argue that their claims come under the capable-of-repetition-yet-evading-review exception to mootness. But this exception is "narrow," and Plaintiffs will not be able to demonstrate the "exceptional circumstances" needed for it to apply.[10]

First, because individuals have three full years between the day they turn 18 and the day they turn 21, Plaintiffs will not be able to show that "the challenged action is in its duration too short to be fully litigated prior to cessation or

[8] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

[9] *See McKinley v. Kaplan*, 177 F.3d 1253, 1256 (11th Cir. 1999) (discussing *Fox v. Bd. of Trs. of State Univ. of New York*, 42 F.3d 135 (2d Cir. 1994)) (adding a claim for monetary damages cannot save a case from mootness where the defendant would be entitled to qualified immunity).

[10] *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 231 (3d Cir. 2021); *see also id.* (noting that a plaintiff "bears the burden [of] show[ing] that the . . . exception applies").

expiration."[11] That is an independent reason to reject the application of this exception.[12]

Second, Plaintiffs will be unable to show that "there is a reasonable expectation that the ***same*** complaining party will be subject to the same action again."[13] There is, of course, no possibility that the named Plaintiffs will ever be under 21 again, and so this issue "is certainly not capable of repetition so far as [they are] concerned."[14]

And there is no "more than a theoretical possibility of the action occurring against" a SAF member again.[15] As previously explained to this Court, there are numerous exceptions to the license requirement that allow 18-to-20-year-olds to

---

[11] *Id.*; *cf. Gulden v. Exxon Mobil Corp.*, 119 F.4th 299, 309 (3d Cir. 2024) (six hundred days is not too short to prevent judicial review); *cf. also Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, 157 F.4th 834 (6th Cir. 2025) ("Gun licenses do not have so short a duration as to create an 'exceptional' scenario in which litigation may not practically run its course before the controversy ends.").

[12] *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (noting that "two circumstances," including the too-short-duration requirement, must be "simultaneously present" for the exception to apply).

[13] *Cnty. of Butler*, 8 F.4th at 231 (emphasis added); *cf. United States v. Sanchez-Gomez*, 584 U.S. 381, 391–94 (2018) (declining to apply "capable of repetition yet evading review" exception, and holding that case was moot, because plaintiffs could not show that they ***themselves*** would subject to the challenged policy in the future).

[14] *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974); *cf. United States v. Juv. Male*, 564 U.S. 932, 938 (2011) (declining to apply exception because plaintiff "has now turned 21, and [so] he will never again be subject to" the challenged order)

[15] *Cnty. of Butler*, 8 F.4th at 231.

carry a concealed weapon, carry in a vehicle, and carry in Philadelphia.[16] Relatedly, there are a host of non-age-related exclusions (none of which are challenged in this lawsuit) that also prevent an individual from obtaining a firearms license.[17] And challenging the Philadelphia-carry provision requires demonstrating a specific intent

---

[16] *See generally* ECF No. 33 at 7–10 (Defendant's Brief in Support of His Motion to Stay Briefing on Plaintiffs' Motion for Summary Judgment, and for a Case Management Order); ECF No. 35 (order granting that motion).

[17] *See* 18 Pa. C.S. § 6109(e)(1) (stating that "[a] license shall not be issued to . . . [a]n individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety"; "[a]n individual who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act"; "[a]n individual convicted of a crime enumerated in section 6105; "[a]n individual who, within the past ten years, has been adjudicated delinquent for a crime enumerated in section 6105 or for an offense under The Controlled Substance, Drug, Device and Cosmetic Act"; "[a]n individual who is not of sound mind or who has ever been committed to a mental institution"; "[a]n individual who is addicted to or is an unlawful user of marijuana or a stimulant, depressant or narcotic drug"; "[a]n individual who is a habitual drunkard"; "[a]n individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons)"; "[a] resident of another state who does not possess a current license or permit or similar document to carry a firearm issued by that state if a license is provided for by the laws of that state, as published annually in the Federal Register by the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury under 18 U.S.C. § 921(a)(19) (relating to definitions)"; "[a]n alien who is illegally in the United States"; "[a]n individual who has been discharged from the armed forces of the United States under dishonorable conditions"; "[a]n individual who is a fugitive from justice"; "[a]n individual who is otherwise prohibited from possessing, using, manufacturing, controlling, purchasing, selling or transferring a firearm as provided by section 6105"; or "[a]n individual who is prohibited from possessing or acquiring a firearm under the statutes of the United States")

of visiting that locale.[18] Thus SAF needs an age-appropriate member who wishes to engage in activity not covered by any of the exceptions, who is not otherwise excluded from obtaining a license, with concrete plans to visit Philadelphia.

But even a cursory glance at the lengthy and detailed jurisdictional allegations and assertions made by the named Plaintiffs in connection with their Complaint[19] shows that identifying such members with be no simple task. Indeed, for its Rule 30(b)(6) deposition, SAF was specifically asked to identify "the members on whose behalf [it] br[ought] this action."[20] Despite that explicit request, SAF's representative could identify only two additional, 18-to-20-year-old members (both of whom, as noted above, have since turned 21).[21] And that representative was unable to definitively confirm whether those individuals were eligible for any of the license-requirement exceptions;[22] whether those individuals were otherwise

---

[18] *See Suarez v. Paris*, 741 F. Supp. 3d 237, 246–48 (M.D. Pa. 2024).

[19] ECF No. 1 ¶¶ 36–77; *id* at 47–69.

[20] *See* Ex. 6 (Notice for Rule 30(b)(6) of SAF) at 2.

[21] *See* Ex. 4 at 71 (Q: "Is there a [John Doe] 3?" A: "No." Q: "So you only know of two other similarly situated members?" A: "That we have identified specifically, yes." Q: "Okay. And you are SAF?" A: "Correct.").

[22] *See* Ex. 4 at 64 (Q: "Are you certain that [John Doe 1] met all of these criteria . . . .?" A: "Define certain." Q: "Well, do you know if he meets all the criteria . . . ?" A: "I believe that he meets all criteria . . . [b]ased on the information that was represented to me . . . [b]y the named plaintiffs."); *id.* at 66 (Q: "Does John Doe 1 hunt?" A: "I do not know.");

excluded from obtaining a license;[23] or whether those individuals had any intent to travel to Philadelphia.[24]

Alternately, SAF may point to its "self-description of the activities of its members" to argue that "there is a statistical probability that some of [its] members" do not meet those exceptions or exclusions and have concrete plans to visit Philadelphia.[25] But the Supreme Court has explicitly rejected such an approach to organizational standing.[26]

Finally, Plaintiffs may point to *Lara*, in which the Third Circuit applied the capable-of-repetition exception because it concluded that "it is reasonably likely that ***other*** 18-to-20-year-olds" will be subject to the challenged law.[27] But as noted above, the Supreme Court has clearly stated—and repeatedly held—that for the capable-of-repetition exception to apply, there must be a showing that "the ***same***

---

[23] See *id.* at 70 (Q: "Has [John Doe 1] ever used marijuana?" A: "Not to my knowledge."); *id.* at 71 ("Has [John Doe 2] ever been charged with a crime?" A: "I don't know.").

[24] *See id.* at 65 (Q: "Do you know if John Doe 1 has a trip to Philadelphia planned?" A: "I do not."); *id.* at 71 (Q: "Does [John Doe 2] have any plans to stop in Philadelphia before turning 21?" A: "I do not know.").

[25] *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009).

[26] *See id.* (the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities").

[27] *Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428, 446 (3d Cir. 2025) (emphasis added).

complaining party will be subject to the same action again."[28] Thus this Court must "reconcile [the] possible conflict,"[29] between the just-quoted language from *Lara* and the Supreme Court's repeated holdings that the ***same*** complaining party is needed.

But such reconciliation is not difficult. The full quote from *Lara* is as follows: "[I]t is reasonably likely that other 18-to-20-year-olds, ***including members of the organizational Appellants*** . . . will be banned from carrying guns in public yet again."[30] The organization in *Lara* had, via a supplemental submission, identified an age-appropriate member.[31] So, to reconcile *Lara* with Supreme Court precedent, it must be understood as holding only that "there [was] a reasonable expectation that [members of the] same complaining ***[organization]*** will be subject to the same action again."[32]

But that same rationale does not apply here. The provision challenged in *Lara* forbade unlicensed individuals from "carry[ing] a firearm upon [***any***] public streets or upon ***any*** public property during a [declared] emergency."[33] Thus the

---

[28] *Spencer*, 523 U.S. at 17 (emphasis added).

[29] *Loftus v. Se. Pennsylvania Transp. Auth.*, 843 F. Supp. 981 (E.D. Pa. 1994).

[30] *Lara*, 125 F.4th at 446 (emphasis added).

[31] *Id.* at 446 n.29.

[32] *Id.* at 446.

[33] 18 Pa. C.S. § 6107(a) (emphasis added).

organization's members did not—as they need do here—demonstrate a specific intent to travel to a particular city in the Commonwealth. Instead, they needed to demonstrate only an intent to walk outside their front door. Further, the ***only*** exception to the *Lara* provision was if the individual was "[a]ctively engaged in a defense of [his or her] life or property from peril or threat."[34] Contrast that to the litany of exceptions and exclusions in the challenged law, which, as noted above, the named Plaintiffs spilled copious ink attempting to skirt. There is no "more than a theoretical possibility," then, of SAF finding similarly situated members.

*d. If SAF attempts to identify additional age-appropriate members, this Court should reopen discovery.*

If SAF ***does*** attempt to identify such members, this Court should reopen discovery under Fed. R. Civ. P. 56(d) so that Defendant may depose them to ensure they have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]"[35] Specifically, Defendant should be permitted to explore any newly identified member's assertion that they wish to engage in conduct not covered by a Section

---

[34] *Id.* § 6107(a)(1).

[35] *Baker v. Carr*, 369 U.S. 186, 204 (1962).

6106 exception,[36] any assertion that they intend to travel to Philadelphia,[37] and any assertion that they are not excluded from obtaining a license because, *inter alia*, their "character and reputation is [not] such that [they] would be likely to act in a manner dangerous to public safety."[38]

Plaintiffs may argue that additional discovery is inappropriate in light of the age of this case. But Plaintiffs have (or should have) been aware that they needed to identify additional SAF members to maintain standing. Indeed, Defendant put them

---

[36] As one example of why such discovery is needed, Section 6106(b) exempts individuals carrying an unloaded firearm "to or from . . . target practice." The three named Plaintiffs alleged that they wanted to carry an unloaded firearm "to or from . . . a range [and] target shooting." ECF No. 1 ¶¶ 40.a; 54.a; and 68.a. They also alleged that they wanted to "stop for a bathroom break[], food, [or] coffee, or . . . pick up or drop off a friend" on that journey. *Id.* But more information about those contemplated frolics and detours is necessary to determine whether they would take the Plaintiffs out of the target-practice exception. *Cf. Commonwealth v. Gunter*, 2024 WL 2048719, at **1, 3 (Pa. Super. Ct. 2024) ("[T]he evidence did not establish the target practice affirmative defense" where the defendant "left [a] gun show" and "drove around very briefly before returning[.]").

[37] *See Suarez*, 741 F. Supp. 3d at 246–48 (plaintiffs "expressed a general desire to travel throughout the Commonwealth and to carry firearms on public streets and public property in Pennsylvania"; court concluded that "[t]hese allegations [were] too abstract and lacking in detail to satisfy Article III" with respect to plaintiffs' challenge to the Philadelphia-carry provision); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("[T]he affiants' profession of an 'intent' to return to the places they had visited before. . . is simply not enough [to establish standing]. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

[38] 18 Pa. C.S. § 6109(e)(1)(i).

on notice of the age-out issue more than a year ago.[39] Further, in light of Defendant's request for jurisdictional discovery (which request, notably, was granted by this Court),[40] and undersigned counsel's thorough questioning regarding standing during Plaintiffs' depositions,[41] Plaintiffs could and should have anticipated this request.

2. The concealed-carry provision is constitutional.

In any event, this Court can affirm the constitutionality of the concealed-carry provision.[42] This is because "the Commonwealth of Pennsylvania generally permits open carry of firearms without a license,"[43] and the Supreme Court has already acknowledged "the historical consensus that states could constitutionally eliminate

[39] *See, e.g.*, ECF No. 45 at 6 n.3 (Defendant's August 1, 2025 Motion to Extend, noting that the matter will "soon become moot for the two unidentified members of the [SAF] on whose behalf SAF has standing to bring this lawsuit").

[40] *See* ECF Nos. 32 & 33.

[41] *See generally* Exs. 1–3.

[42] In *Lara*, the Third Circuit held that "18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend," 125 F.4th at 438; that "the constitutional right to keep and bear arms should be understood according to its public meaning in 1791," *id.* at 441; and that the historical record did not show "that Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights is consistent with the principles that underpin founding-era firearm regulations," *id.* at 445. Defendant presumes this Court will consider itself bound by those holdings, but reserves the right to challenge these holdings on appeal. *See generally* Ex. 7.

[43] *Suarez*, 741 F. Supp. 3d at 243.

concealed carry if they did not similarly prohibit open carry."[44] Indeed, a judge of this court has already rejected a challenge to the concealed-carry provision on this very basis.[45] This Court should do the same.

3. This Court should sever the challenge to the Philadelphia-carry provision and transfer it to the Eastern District of Pennsylvania.

Regarding the Philadelphia-carry provision, this Court should sever that challenge and transfer it to the Eastern District of Pennsylvania. As recognized by another judge in this District, the "[l]ocal interests of Philadelphia in the viability of [that provision] are manifold," and the "PSP is not the only entity authorized to enforce [it], let alone the most likely entity to hypothetically enforce it."[46] "The most appropriate course of action" regarding that challenge, then, "is severance and transfer" to the Eastern District of Pennsylvania.[47]

4. The Philadelphia-carry provision is constitutional.

If the Court does not sever and transfer the challenge to the Philadelphia-carry provision, it can affirm the constitutionality of that provision because it is "consistent

---

[44] *Id.* at 256 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 53 (2022)).

[45] *See id.* at 258 (granting summary judgment in favor of Commissioner on claim challenging concealed-carry provision).

[46] *Suarez*, 741 F. Supp. 3d at 248.

[47] *Id.*

with the Nation's historical tradition of firearm regulation"[48] in urban areas generally, and in Philadelphia specifically.

In 1721, the General Assembly made it completely illegal to "fire any gun or other firearms . . . within the city of Philadelphia, without the governor's special license for the same."[49] Nearly seventy years later, contemporaneously with the Founding, Philadelphia enacted an ordinance that prohibited anyone from "fir[ing] or discharg[ing] any cannon, or other piece of artillery of ordnance . . . without the permission of the Mayor."[50] Other large American cities had similar bans.[51] The explicit rationale for these early statutes is that a projectile fired in a densely populated city is much more likely to cause damage than one fired in a rural area.[52]

Of course, Plaintiffs may note that these statutes did not ban the carrying of firearms, only their discharge. But Plaintiffs want to carry firearms so that they may

---

48 *Bruen*, 597 U.S. at 24.

49 https://firearmslaw.duke.edu/laws/an-act-for-preventing-accidents-that-may-happen-by-fire-1721-pa-laws-18-18-21-andrew-bradford

50 Ex. 8 (*The Constitution and Ordinances of the City of Philadelphia*, Ch. VI, p. 46 (1790)).

51 *See Barris v. Stroud Twp.*, 310 A.3d 175, 209 (Pa. 2024) (discussing laws of Boston and New York City).

52 *See, e.g.*, https://firearmslaw.duke.edu/laws/an-act-for-preventing-accidents-that-may-happen-by-fire-1721-pa-laws-18-18-21-andrew-bradford ("much Mischief may happen by shooting of guns . . . within the city of Philadelphia, if not speedily prevented . . . .").

discharge them, if necessary, for their own protection.[53] So a ban on discharge was, in effect, a functional ban on carrying in the manner that Plaintiffs presumably desire to.

More importantly, as Justice Barrett has recognized, courts should not "assume[] that founding-era legislatures maximally exercised their power to regulate," because such an assumption is "flawed, and originalism does not require" it.[54] In other words, the fact that these laws only prohibit the ***discharge*** of firearms in cities does not mean that laws prohibiting the mere ***carrying*** of firearms in cities are unconstitutional. This is especially true because, as just noted, firearms are ***carried*** so that they may be ***discharged***, if necessary.

Further, and as *Lara* recognized, "laws through the end of the 19th century . . . can be evidence of a historical tradition and shed important light on the meaning of the [Second] Amendment as it was originally understood."[55] And such evidence exists. For example, in 1868, the General Assembly made it completely illegal to

---

[53] *See, e.g.*, Ex. 1 at 47–50; Ex. 2 at 47–49; Ex. 3 at 41–43. Indeed, if Plaintiffs had absolutely no intent on ever discharging their firearms—but instead only wished to carry them to, e.g., make a fashion or political statement—their conduct may not even be protected by the Second Amendment. *See Bruen*, 597 U.S. at 10 ("[T]he Second [Amendment] protect[s] an individual's right to carry a handgun ***for self-defense*** outside the home." (emphasis added)).

[54] *United States v. Rahimi*, 602 U.S. 680, 739–40 (2024) (Barrett, J., concurring).

[55] *Lara*, 125 F.4th at 441; *see also id.* ("[P]ost-ratification history can confirm a court's understanding of Founding-era public meaning.").

"carry fire-arms . . . in [Philadelphia's Fairmount P]ark."[56] And in 1873, the General Assembly made it completely illegal to "carry any pistol, dirk-knife, slung-shot, or deadly weapon within the city limits of Harrisburg . . . ."[57] These laws are undoubtedly based on the same rationale as the earlier, 18th-century statutes—namely preventing the discharge of firearms in densely populated cities. And they demonstrate an understanding the Second Amendment permits legislatures to address that concern in a slightly broader way.[58]

The Philadelphia-carry provision at issue in this lawsuit is undoubtedly based on the same rationale.[59] And while it imposes a complete ban on carrying in

---

[56] 53 P.S. § 16514. Note that this statute remains in effect today.

[57] https://firearmslaw.duke.edu/laws/an-act-to-prevent-the-carrying-of-deadly-weapons-within-the-city-of-harrisburg-no-810-1-1873-pa-laws-735-735-736-benjamin-singerly.

Note that the historical evidence is not limited to the Commonwealth. For example, in 1858, it became illegal "to carry . . . any deadly or dangerous weapons . . . within the city of Washington." https://firearmslaw.duke.edu/laws/1-william-b-webb-the-laws-of-the-corporation-of-the-of-washington-digested-and-arranged-under-appropriate-in-accordance-with-a-joint-resolution-of-the-city-418-1868-act-of-nov-18-1858.

[58] *Rahimi*, 602 U.S. at 739 (Barrett, J., concurring) ("[I]mposing a test that demands overly specific analogues has serious problems. . . . It forces 21st-centry regulations to follow late-18th-century policy choices, giving us a law trapped in amber.").

[59] *See Rahimi*, 602 U.S. at 692 ("[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.").

Philadelphia (at least, for those individuals unable to get a license), so too did the 19th-century laws (which, as noted above, demonstrate an understanding that the Second Amendment permitted such total bans).[60] This Court, then, can affirm the constitutionality of the Philadelphia-carry provision.

5. The vehicle-carry provision is constitutional.

This Court can also affirm the constitutionality of the vehicle-carry provision.[61]

In the first place, carrying a firearm in a vehicle is a form of concealed carry, and as noted above, concealed carry may be banned consistent with the Second Amendment. That is, unless an individual hangs their handgun from their rearview mirror à la a pair of fuzzy dice, a firearm carried in a vehicle is ***necessarily*** a firearm

[60] *Cf. Rahimi*, 602 U.S. at 692 ("Even when a law regulates arms-bearing for a permissible reason . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding. [But] when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. [This is because t]he law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin.").

[61] The Third Circuit, in *Koons*, is currently considering a challenge to N.J. Stat. Ann. § 2C:58-4.6, which makes it illegal "to carry or transport a firearm . . . while in a vehicle in New Jersey, unless the handgun is unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle." *See Koons*, 156 F.4th at 269–70. As noted above, that challenge is currently before the Third Circuit *en banc*.

concealed from view.[62] This is precisely why "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers."[63] A ban on carrying firearms in a vehicle, then, is consistent with Founding-era laws guarding against "secret advantages and unmanly assassinations" by those carrying a concealed weapon.[64] Indeed, a Pennsylvania court considering a Second Amendment challenge to the vehicle-carry provision has already reached that conclusion.[65]

---

[62] *See Commonwealth v. Williams*, 341 A.3d 144, 157 (Pa. Super. 2025), *appeal granted in part*, 352 A.3d 455 (Pa. 2026) ("Carrying a weapon concealed on one's person versus storing it in the glovebox or center console is . . . a distinction without a difference. If anything, the additional number of spaces in which to store a firearm within a vehicle, the variety of firearms that can be carried within a vehicle as opposed to concealed on one's person, and the portability provided by modern vehicles all weigh in favor of section 6106 applying with greater force to possession within a vehicle than possession on one's person."); *see also Commonwealth v. Walker*, 280 A.2d 590, 591 (Pa. Super. 1971) ("The essence of the offense is the 'concealed carrying' of a weapon, whether it is in a vehicle or on the person. The means by which the gun is transported—car or person—is only detail to describe the method of concealment in which the gun is carried.").

[63] *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *see id.* ("[S]uspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed. . . .").

[64] *D.C. v. Heller*, 554 U.S. 570, 613 (2008) (quoting *State v. Chandler*, 5 La. Ann. 489, 490 (1850)); *cf. Rahimi*, 602 U.S. at 692 ("[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.").

[65] *See Williams*, 341 A.3d at 158 (affirming constitutionality of vehicle-carry provision). As noted above, the challenge is currently before the Pennsylvania Supreme Court.

Further supporting the constitutionality of the vehicle-carry provision is the fact that it is consistent with the Nation's historical tradition of firearms regulation on and near roads. In 1760, the General Assembly made it illegal "to fire a gun on or near any of the king's highways."[66] Numerous other colonies and states passed similar laws at or near the Founding.[67] These laws, of course, evince a concern for the well-being of travelers on those roads, and of the free-flow of travel and commerce more generally.

The vehicle-carry provision serves that same purpose—i.e., the safety of travelers on public roads. Of course, the vehicle-carry provision's method of addressing that concern is arguably broader than the historical laws because it completely bans the carrying of firearms in vehicles (at least for those unable to get a license), whereas the historical laws only banned the discharge of firearms on or near roads. But as explained above, the entire reason Plaintiffs wish to carry firearms in their vehicles is so that they can deploy them, if necessary. Thus the historical

---

[66] https://firearmslaw.duke.edu/laws/a-digest-of-the-laws-of-pennsylvania-270-1818-act-of-april-9th-1760.

[67] *See, e.g.*, *Barris*, 310 A.3d at 209 (discussing a 1731 Rhode Island Session law that prohibited "the firing of any gun or pistol in the streets of any of the towns of this government"); *id.* at 210 (discussing a 1824 New York law that prohibited the firing of "any gun or pistol in any street, lane, or alley"); *id.* at 211 (discussing a 1821 Tennessee law that banned "shooting . . . within two hundred yards of any public road of the first or second class within the state")

laws banned precisely the type of activity Plaintiffs wish to engage in, and thus the vehicle-carry provision is functionally equivalent to the historical laws.

This Court, then, should affirm the constitutionality of the vehicle-carry provision.

## V. Conclusion

This Court lacks jurisdiction over Plaintiffs' claims, and so should dismiss the entire Complaint for that reason alone. If it does not, this Court should affirm the constitutionality of the concealed-carry and vehicle-carry provisions, and either sever the challenge to the Philadelphia-carry provision or affirm the constitutionality of the that provision.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By: */s/ Jacob Frasch*
Jacob Frasch
Senior Deputy Attorney General
Attorney ID PA No. 328362

Nicole R. DiTomo
Chief Deputy Attorney General
Civil Litigation Section

Counsel for Defendant Paris

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 580-7897
jfrasch@attorneygeneral.gov

Date: August 14, 2026

# CERTIFICATE OF SERVICE

Pursuant to Local Rule 4.2, I certify that a true and correct copy of the foregoing and all attachments was served on all counsel of record via the ECF system on August 14, 2026.

*/s/ Jacob Frasch*
Jacob Frasch
Senior Deputy Attorney General