**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAYLOR BROWN, *et al.*** | : | |
| | : | |
| Plaintiffs | : | **Civil Action No. 1:24-cv-1015** |
| | : | |
| **v.** | : | |
| | : | |
| **COL. CHRISTOPHER PARIS,** | : | |
| Commissioner of Pennsylvania | : | Judge Julia K. Munley |
| State Police | : | |
| | : | |
| Defendant | : | |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN REPLY SUPPORTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Introduction** .......... 1

**Counter-Statement of Facts** .......... 4

I. Pennsylvania bans 18-to-20-year-old adults from carrying and transporting firearms for the purpose of self-defense, including in GFSZ .......... 4

II. Pennsylvania precludes 18-to-20-year-old adults from obtaining a LTCF .......... 9

III. Facts Specific to Plaintiffs .......... 11

*A. Individual Plaintiffs and the Commissioner's Admissions About Them* .......... 11

*B. Plaintiff Second Amendment Foundation* .......... 13

**Counter-Statement of Question Involved** .......... 14

**Argument** .......... 14

I. This Court Retains Jurisdiction in this Matter .......... 15

*A. Plaintiffs Brown, Palmer, and Ness Continue to Have Standing* .......... 16

*B. SAF's Membership Throughout This Litigation Includes 18-to-20-year-old, Pennsylvania Members* .......... 17

*C. No Different Than in Lara, Plaintiffs Can Also Demonstrate Capable-of-Repetition-yet-Evading-Review, Especially Given the Commissioner's Ongoing Enforcement of the Challenged Laws and Dilatory Tactics* .......... 21

*D. Alternatively, the Court Should Permit Chapogas, Macro, Suter, and Gaston to be Added as Plaintiffs or Grant Them Intervention* .......... 23

II. Plaintiffs are Entitled to Summary Judgment in Relation to Section 6106, 6108, and 6109(b) .......... 25

A. *The Second Amendment's Plain Text Protects Plaintiffs' Conduct* ........ 29

B. *There Exists No Historical Tradition of Similar Firearm Regulation* ........ 30

1. Sections 6106 and 6109(b) are unconstitutional ........ 31

2. There is no basis to sever the challenge to Section 6108 provision and transfer it to the Eastern District ........ 33

3. Section 6108 is unconstitutional ........ 36

**Conclusion** ........ 39

## Table of Authorities

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).....................................................15

*Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226 (3d Cir. 2021) ..............................22

*Commonwealth v. Goosby*, 380 A.2d 802 (Pa. Super. Ct. 1977) ........................9, 37

*Commonwealth v. Gunter*, 321 A.3d 939 (Pa. Super. Ct. 2024) .........................5, 31

*Commonwealth v. Hawkins*, 547 Pa. 652 (1997) .....................................................3

*Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. Ct. 2000) ..............4, 8, 9, 31

*Commonwealth v. Lopez*, 523 Pa. 126 (1989).....................................................1, 6

*Commonwealth v. Sumpter*, 340 A.3d 977 (Pa. Super. Ct. 2025) ..........................38

*Commonwealth v. Turner*, 488 A.2d 319 (Pa. Super. 1985) ..............................6, 31

*Commonwealth v. Walker*, 280 A.2d 590 (Pa. Super. 1971)..................................33

*Commonwealth v. Williams*, 341 A.3d 144 (Pa. Super. 2025)...............................33

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................1, 2, 29

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).........................................20

*Fraser v. ATF*, 2023 WL 5490129 (E.D. Va. Aug. 24, 2023) ..........................23, 24

*Hirschfeld v. BATFE*, 14 F.4th 322 (4th Cir. 2021) ..............................................20

*In re Application of Adan*, 437 F.3d 381 (3d Cir. 2006) ........................................21

*In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48 (3d Cir. 2018)..........35

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) ........................................................20

*Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025) .....................passim

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) ...................................2, 29

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ..................passim

*NRA v. BATFE*, 700 F.3d 185 (5th Cir. 2012)........................................................20

*Reno v. Flores,* 507 U.S. 292 (1993).....................................................................20

*Slagle v. Cnty. of Clarion*, 435 F.3d 262 (3d Cir. 2006) ........................................15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ......................................19

*U.S. v. Rahimi*, 144 S. Ct. 1889 (2024) ............................................................1, 26

*Vill. of Arlington Heights v. Metro House. Dev. Corp.*, 429 U.S. 252 (1977) ..17, 20

*Wolford v. Lopez*, 609 U.S. ___, 146 S.Ct. 2032 (2026).................................passim

*Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024).................................................21

**Statutes**

18 Pa.C.S. § 106 .........................................................................................................1

18 Pa.C.S. § 501 .........................................................................................................8

18 Pa.C.S. § 6102 .......................................................................................................5

18 Pa.C.S. § 6106 ...............................................................................................passim

18 Pa.C.S. § 6107 ................................................................................................3, 37

18 Pa.C.S. § 6108 ...............................................................................................passim

18 Pa.C.S. § 6109 ...............................................................................................passim

18 Pa.C.S. § 6119 .......... 1

18 U.S.C. § 922 .......... 2, 14

18 U.S.C. § 924 .......... 7

28 U.S.C. § 1404 .......... 35

**Rules**

Fed.R.Civ.P. 21 .......... 23, 24

Fed.R.Civ.P. 24 .......... 23

Fed.R.Civ.P. 56 .......... 14

## Introduction

There can be no dispute that the Second and Fourteenth Amendments protect the rights of 18-to-20-year-olds to carry firearms, particularly for self-defense outside the home, *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445 (3d Cir. 2025) and the Commissioner no longer disputes this in his brief.

Yet, in outright defiance of the Third Circuit's decision in *Lara* and the U.S. Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008), *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *U.S. v. Rahimi*, 144 S. Ct. 1889 (2024), and most recently *Wolford v. Lopez*, 609 U.S. ___, 146 S.Ct. 2032, 2053 (2026), the Commissioner continues to enforce 18 Pa.C.S. §§ 6106(a), 6108, 6109(b) and the regulations, policies, enforcement practices, and actions related thereto (hereinafter collectively "regulations") that not only effectively bar the Individual Plaintiffs and Second Amendment Foundation's ["SAF"] similarly situated members (collectively "Plaintiffs") from wearing, bearing, carrying, and transporting firearms, including upon their person or in a pocket—whether openly or concealed, loaded or unloaded—outside of their homes, but also threaten Plaintiffs with draconian criminal sanctions[1] should they do so,

---

[1] A violation of 18 Pa.C.S. § 6106 is a felony of the third degree, which can be punished by up to 7 years in jail, per 18 Pa.C.S. § 106(b)(4). A violation of 18 Pa.C.S. § 6108, per 18 Pa.C.S. § 6119, is a misdemeanor of the first degree, which can be punished by up to 5 years in jail, per 18 Pa.C.S. § 106(b)(6).

which if convicted for a violation thereof, would result in them being perpetually prohibited from firearm ownership under federal law, pursuant to 18 U.S.C. § 922(g)(1). But the breadth of these unconstitutional regulations goes even further, making felons out of anyone who, without a license to carry firearms ["LTCF"], simply travels through a Gun Free School Zone[2] ["GFSZ"] or stops to pick up a friend, grab a cup of coffee, or utilize a bathroom, while carrying or transporting his/her firearms to an extremely limited number of locations that are permitted by Defendant.

Plaintiffs only desire to exercise their core, fundamental, individual right to lawfully carry and lawfully transport firearms in public and in vehicles for all lawful purposes including immediate self-defense—a right the Constitution guarantees in its text and acknowledged by Pennsylvania's statutory law.[3] *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)("[I]ndividual self-defense is 'the central component' of the Second Amendment right"); *Heller*, 554 U.S. at 592 (The right to keep and bear arms guarantees "the individual right to possess and carry weapons in case of confrontation."); *Bruen*, 597 U.S. at 10 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). Nothing in the Constitution's text nor the Nation's historical tradition

[2] 18 U.S.C. § 922(q).
[3] *See* Doc. 28, pgs. 17-20

of firearm regulation supports the categorical ban that the prior and continuing enforcement of Defendant's regulations impose on Plaintiffs. Defendant's regulations thus unconstitutionally prohibit and criminalize lawful, constitutionally protected conduct that Plaintiffs seek to engage in, including, but not limited to, lawfully carrying and lawfully transporting firearms for self-defense, including in Philadelphia, and merely being able to travel through a GFSZ, stop for a bathroom break, grab a cup of coffee or bite to eat, or pick up a friend on the way to or from a firearm shooting range.

Even though the Third Circuit in *Lara*—of which the Commissioner was a Party—already held that the "People," to which the Second Amendment applies, includes 18-to-20-year-olds and that Pennsylvania's state of emergency provision—18 Pa.C.S. § 6107—was unconstitutional in relation to 18-to-20-year-olds because it precludes them from being able to carry a firearm for their protection during a state of emergency, Defendant continues to enforce the regulations complained of herein against the Plaintiffs; thereby, depriving them of their right and ability to lawfully carry and lawfully transport firearms. While individuals in Pennsylvania are *purportedly* not barred from openly carrying firearms in public absent a LTCF (except in the cities of the first class),[4] due to a myriad of laws, including GFSZs

[4] While many cite to the Pennsylvania Supreme Court's decision in *Commonwealth v. Hawkins*, 547 Pa. 652, 657, fn. 4 (1997) for the proposition that "[e]xcept in

and the general prohibition of utilizing *any* mode of conveyance while carrying or otherwise transporting a firearm, Plaintiffs are unable to exercise their fundamental right.

As the Defendant's regulations clearly, palpably, and unconstitutionally infringe on Plaintiffs' Second Amendment rights, this Court should grant Plaintiffs' MSJ, declare the regulations unconstitutional, issue a permanent injunction enjoining enforcement of them, and deny the Commissioner's MSJ.

## Counter-Statement of Facts[5]

### I. Pennsylvania bans 18-to-20-year-old adults from carrying and transporting firearms for the purpose of self-defense, including in GFSZ

Pursuant to 18 Pa.C.S. § 6106, Pennsylvania generally requires an individual to obtain an LTCF to carry a concealed firearm in public. Section 6106 (a)(1)

---

Philadelphia, firearms may be carried openly without a license," the Court did not address the Commonwealth's draconian carry and transportation laws in relation to the open carry of firearms. However, the Superior Court has held that "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the limited exceptions found in Section 6106(b); thereby, reflecting that the open carry of firearms is limited to the extremely limited, enumerated locations in Section 6106(b). *Commonwealth v. Hopkins*, 747 A.2d 910, 918 (Pa. Super. Ct. 2000).

[5] While Plaintiffs question whether the Commissioner's Statement of Facts in his Brief (Doc. 67, pg. 1), merely referring to his extremely limited Statement of Material Facts, is sufficient for purposes of L.R. 7.8(a), especially given the preclusion on incorporating other documents and such not being contended to be a counter statement of facts, they leave it to the sound discretion of the Court, as to

provides that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under [18 Pa.C.S. § 6109] commits a felony of the third degree." Section 6106(b) provides a number of exceptions to this requirement—for law-enforcement officers, members of the military, and the like—but these exceptions do not provide the typical, peaceable, law-abiding Pennsylvanian—like Plaintiffs—with the ability to carry a concealed, loaded, and operable firearm[6] for most lawful purposes, including self-defense. Moreover, it prohibits individuals, in the absence of a LTCF, from transporting *even unloaded firearms,* except to extremely limited locations and *only when* transported *directly to and from* those limited locations,[7] and even when an individual complies,

whether the Commissioner has agreed to the adoption of their previously submitted statement of facts. *See* Doc. 28, pgs. 4-12.

[6] For purposes of the applicable exceptions of Section 6106(b) to the Plaintiffs, a firearm is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of the weapon;" thus, including all types of firearms, unlike the general definition of firearm found in 18 Pa.C.S. § 6102.

[7] Plaintiffs are thus barred from stopping for coffee or to use the bathroom when going to an enumerated location, as they must go directly to and from that enumerated location from another enumerated location. *See* § 6106(b)(4), (8), (9), limiting the applicable enumerated locations to going directly to or from 1. a gun range; 2. their home or vacation home; 3. their business; 4. a gun store; and 5. a hunting location. Under this draconian law, an individual, in the absence of an LTCF, is even precluded from purchasing a firearm at a gun show and bringing it home, as it is not an enumerated location.

it is an "affirmative defense," resulting in the Commissioner being able to criminally charge the individual and force them to defend against the charges. *See Commonwealth v. Lopez*, 523 Pa. 126, 131 (1989) (declaring that the Section 6106(b) "exceptions are affirmative defenses, which must be placed in issue by the defendant, and which need not be negated by the prosecutor in its case-in-chief).

As a result of Section 6106(b), an individual, in the absence of a LTCF, is, for example, absolutely barred from: (a) transporting a loaded or unloaded rifle, shotgun, or handgun ("firearm")[8] to a friend's or family member's home; (b) transporting a loaded or unloaded firearm to stores of all forms (*e.g.* grocery store, convenience store, specialty store, department store, … *etc*), malls, restaurants, or Philadelphia; (c) transporting a loaded or unloaded firearm from a successful hunt to a business that processes/butchers the successfully taken game; (d) transporting

---

And the Commissioner even agrees (Doc. 67, pg. 12, fn. 36), citing and quoting *Commonwealth v. Gunter*, 321 A.3d 939, 940 (Pa. Super. Ct. 2024) ("[T]he evidence did not establish the target practice affirmative defense" where the defendant "left [a] gun show" and "drove around very briefly before returning" because "*Gunter did not proceed from his place of assembly to target practice, as the affirmative defense requires*." (emphasis added)).

[8] *See*, *Commonwealth v. Turner*, 488 A.2d 319, 323 (Pa. Super. 1985), *abrogated on other grounds,* by *Commonwealth v. Lopez*, 523 Pa. 126 (1989)(declaring that a violation of Section 6106 occurs where an individual travels to the home "of a parent, a son or daughter, or any other person with whom the defendant may have had the most close and personal relationship, so long as it is not his own abode; similarly, the crime is committed if the weapon is concealed upon his person while at a business establishment of people with whom he regularly does business, if this is not *his* 'fixed place of business'") (emphasis in original).

a loaded or unloaded firearm from a Federal Firearms Licensee (*i.e.* gun dealer) to another Federal Firearms Licensee or firing range; (e) transporting a loaded or unloaded firearm from a range to another range or, in the event of malfunction, to a Federal Firearms Licensee to address any mechanical issue with the firearm; and, (f) while transporting a loaded or unloaded firearm to or from a range or other permitted location specified in Section 6106(b) from stopping for bathroom breaks, food, coffee, or to pick up or drop off a friend.

Worse yet, in the absence of an LTCF, as a result of traveling through a GFSZ, an individual can be sentenced to 5 years in jail and fined.[9] And let there be no question, there are "500 school districts" in Pennsylvania, with 2,931 public schools for the 2026 school year,[10] as well as, "more than 160 brick-and-mortar charter schools and 14 cyber schools," which does not even begin to include the private schools.[11] Resultantly, there are *thousands* of school zones in the Commonwealth,[12] with each one having an invisible 1,000 foot boundary around it; whereby, absent a

---

[9] 18 U.S.C. § 924(a)(1).

[10] *See* https://www.publicschoolreview.com/pennsylvania

[11] *See* https://www.pa.gov/agencies/education/resources/types-of-schools

[12] The Pennsylvania Department of Education makes an interactive map available of the location of all public schools but going to https://www.pa.gov/agencies/education/resources/types-of-schools.html, selecting "Public Schools – Interactive Map" and selecting the areas/regions that are desired. For purposes of the map above, all areas/regions were selected.

LTCF, an individual carrying a firearm for lawful purposes, including by merely driving through it, risks becoming a felon.




Furthermore, although Pennsylvania *purportedly* allows individuals to openly carry firearms without a license (except in cities of the first class),[13] it has broadly criminalized the carrying of loaded concealed firearms in public and in vehicles[14] by ordinary, law-abiding citizens, unless they have a valid LTCF. It has also, pursuant to 18 Pa.C.S. § 6108, criminalized the carrying of all forms of firearms—regardless of whether loaded or unloaded—"upon the public streets or upon any public

---

[13] *But see, Hopkins*, 747 A.2d at 918 (holding that the open carrying of a firearm is limited to the finite locations enumerated in Section 6106(b); *see also,* fn 7, *supra*.

[14] Vehicles are defined extremely broadly, pursuant 18 Pa.C.S. § 501, as "[a] conveyance of any kind, whether or not motorized, that is designed to transport people or property." Thus, bikes, horses, rollerskates, rollerblades, and even wheelbarrows constitute "vehicles" to which Section 6106 applies.

property"[15] of cities of the first class, unless the individual has a LTCF or meets an exemption under Section 6106(b). Thereby precluding Plaintiffs, *in toto*, from lawfully carrying and lawfully transporting loaded firearms for their protection in Philadelphia. Moreover, given the GFSZs, the ability to open carry a firearm is virtually extinguished.

## II. Pennsylvania precludes 18-to-20-year-old adults from obtaining a LTCF

18 Pa.C.S. § 6109(b) provides:

> **Place of application.--**An individual who is 21 years of age or older may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth. If the applicant is a resident of this Commonwealth, he shall make application with the sheriff of the county in which he resides or, if a resident of a city of the first class, with the chief of police of that city

While Section 6109(b) seemingly requires an applicant to be 21 years of age or older, Section 6109(e) does not specify that a license shall not be issued to someone who is under the age of 21. *See*, Section 6109(e)(1)(i—xiv). Regardless, the Commissioner admits in his Answer (Doc. 18, ¶¶ 8, 17) that 18-to-20-year-olds are

---

[15] For purposes of Section 6108, the public streets and property include not only government buildings and spaces but also all roads and sidewalks "used by members of the public," *Commonwealth v. Goosby*, 380 A.2d 802, 806 (Pa. Super. Ct. 1977), and "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the exceptions found in Section 6106(b), *Hopkins*, 747 A.2d at 918.

prohibited, as a result of Section 6109(b), "from applying for and obtaining a permit to carry."

Moreover, although 18 Pa.C.S. § 6109 purports to provide sole-discretion to county sheriffs as to whether to issue a LTCF, the Commissioner, through his PSP, requires sheriffs to utilize his LTCF licensing portal, which precludes sheriffs from issuing a LTCF to an applicant who has been denied or otherwise disapproved of by the PSP, including those applicants who are between 18 and 20 years of age.[16] Specifically, upon a sheriff attempting to process an application of an individual between 18 and 20 years of age, whenever he or one of his deputies attempt to either swipe the applicant's driver's license or state issued identification card or manually insert the applicant's information into the PSP's LTCF processing portal (hereinafter "PSP's system"), the PSP's system precludes him from being able to submit the information for processing, approval, and issuance of the LTCF.[17] Instead of allowing a sheriff or his deputies to submit the information for processing, approval, and issuance, the PSP's system outlines the date of birth section in red and pops up a box declaring "Validation Failed", indicating that because the individual is under 21 years of age, the sheriff cannot approve the applicant and issue the LTCF.[18] In the absence of being able to process the applicant through the PSP's system and

---

[16] Plaintiffs' SOMF, ¶ 12; Doc. 18, ¶ 31-34; *see also*, Exhibit N, ¶¶ 4-8.
[17] *Id.*, ¶ 13; *see also*, Exhibit N, ¶¶ 4-8.
[18] *Id.*, ¶ 14; *see also*, Exhibits D and N, ¶¶ 4-8.

obtain an approval from the PSP, no sheriff throughout this Commonwealth has an ability to issue an LTCF to an applicant, as the ability to issue the LTCF is through the PSP's system.[19] Thus, the PSP, through its system, is actively precluding sheriffs throughout this Commonwealth from approving applicants between the ages of 18 and 20 and issuing LTCFs to them.[20] And Butler County Sheriff Slupe has declared that "if PSP's system and 18 Pa.C.S. § 6109 did not preclude me from issuing an LTCF to an otherwise eligible applicant between the ages of 18 and 20 years old, I would issue LTCF's to those otherwise eligible applicants."[21]

## III. Facts Specific to Plaintiffs

### *A. Individual Plaintiffs and the Commissioner's Admissions About Them*

While it is acknowledged that Plaintiffs Brown, Palmer, and Ness are now over 21, with Ness, the youngest of the three, having turned 21 in July of this year, for purposes of their response to the Commissioner's mootness arguments, beyond their SOMF (Doc. 27-7) and facts specific to them as address in their Principal Brief (Doc. 28), they believe it important to draw to the Court's attention, the Commissioner's admissions about them in his Answer (Doc. 18) and Response to

[19] *Id.*, ¶ 15; *see also*, Exhibit N, ¶¶ 4-8.
[20] *Id.*, ¶ 16; *see also*, Exhibit N, ¶¶ 4-8.
[21] *Id.*, ¶ 17.

Plaintiffs' SOMF (Doc. 68), as those responses relate not merely to when Plaintiffs filed their SOMF on October 7, 2024, but through the filing of his Response. Specifically, the Commissioner admits that Brown, Palmer, and Ness, are residents of this Commonwealth and other than *now* being 21 or older, have never been otherwise prohibited under the law from purchasing, possessing or utilizing firearms.[22] Moreover, each owns firearms, including a handgun,[23] which they desire to carry loaded and unloaded, *without restriction*, throughout this Commonwealth, including in a vehicle.[24] Furthermore, the Commissioner admits that they have all been "responsible, peaceable, law-abiding citizens with no history of violent behavior or other conduct that would suggest [they] pose[] any threat or danger" and that they've abstained from their desired conduct, because of fear of being prosecuted, incarcerated and fined under the challenged regulations.[25] Lastly, he admits that they are subject to the restrictions of Section 6106, 6108, and 6109[26] and that they "would be subject to criminal prosecution if they violate §6106 and §6108, which apply to all Pennsylvanians."[27]

---

[22] Doc 68, ¶¶ 18-19, 31-32, 45-46.
[23] *Id.*, ¶¶ 20, 33, 47.
[24] *Id.*, ¶¶ 21-22, 34-35, 48-49.
[25] *Id.*, ¶¶ 27, 29, 40, 42, 54, 56.
[26] Doc. 18, ¶¶ 42, 44, 47, 58, 61, 72, 75.
[27] *Id.*, ¶¶ 94, 109.

### *B. Plaintiff Second Amendment Foundation*

SAF has over 720,000 members and supporters nationwide, including thousands of members and supporters in Pennsylvania, inclusive of the Individual Plaintiffs Brown, Palmer, and Ness, who are residents of the Commonwealth of Pennsylvania, that were between the ages of 18 and 20 at the time this case was instituted, and who desire to lawfully carry and lawfully transport firearms for the protection of themselves, loved ones, and others, but for Defendant's enforcement of the challenged laws.[28] SAF continues to have members and supporters across this Commonwealth, in every federal district of this Commonwealth, who are residents, between the ages of 18 and 20, including, but not limited to, life members Keegan Gaston,[29] Nicholas Chapogas,[30] August Macro,[31] and Kelanai Suter,[32] who desire to lawfully carry and lawfully transport firearms for the protection of themselves, loved ones, and others, but for Defendant's enforcement of the challenged laws.[33] SAF also has a life member, who is a resident of this Commonwealth and will turn 18 years of age by the end of January 2027, and whom, upon turning 18 years of age,

---

[28] *See* Exhibit K, Declaration of Alan Gottlieb, ¶ 5.
[29] Keegan Gaston was a life member of SAF during the litigation in *Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428, 445, fn. 28 (3d Cir. 2025) and remains a life member. As reflected in Exhibit F, pg. 8, ¶¶ 1-2, he will not become 21 years of age until June of 2027. *See also* Exhibit J, Declaration of Keegan Gaston.
[30] *See* Exhibit G, Declaration of Nick Chapogas.
[31] *See* Exhibit H, Declaration of August Macro.
[32] *See* Exhibit I, Declaration of Kelanai Suter.
[33] *See* Exhibit K, Declaration of Alan Gottlieb, ¶ 6.

desires to lawfully carry and lawfully transport firearms for the protection of himself, loved ones, and others, but for Defendant's enforcement of the challenged laws.[34]

SAF's similarly situated members are: (1) between the ages of 18 and 20, (2) neither prohibited under state or federal law from purchasing, possessing, or utilizing firearms and ammunition, (3) are precluded from obtaining a LTCF due to Section 6109(b) and the PSP's system, and, (4) subject to the restrictions imposed by 18 U.S.C. § 922(q) and 18 Pa.C.S. §§ 6106, 6108.[35]

## Counter-Statement of Question Involved

> Whether Defendant's regulations, which prevent the Individual Plaintiffs and similarly situated members of Second Amendment Foundation from carrying and transporting loaded and unloaded, operable firearms on their person, outside their homes, while in public and in motor vehicles, including in GFSZs and Cities of the First Class, for lawful purposes, including immediate self-defense, violate their Second Amendment rights?
>
> Suggested Answer in the *Affirmative*.

## Argument

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law.[36] Fed.R.Civ.P. 56(a). A

---

[34] *Id.*, ¶ 7; *see also*, Exhibit M, Declaration of B.R., filed under seal.
[35] *See* Exhibit K, Declaration of Alan Gottlieb, ¶ 8.
[36] It's interesting that the Commissioner does not spend a single word of his brief (Doc. 67) addressing the standard for summary judgment.

dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). As is readily apparent from the factual and legal background outlined above, it is clear that Plaintiffs—not the Commissioner—are entitled to summary judgment. However, before replying in support of their MSJ, Plaintiffs will address the Commissioner's arguments regarding standing.

## I. This Court Retains Jurisdiction in this Matter

It is truly telling that the Commissioner spends and wastes the majority of his brief challenging the standing of Plaintiffs, instead of arguing the constitutionality of the challenged laws. Regardless, as addressed previously, while Plaintiffs Brown, Palmer, and Ness are now over 21, with Ness, the youngest of the three, having turned 21 in July of this year, beyond these Plaintiffs, nevertheless, still having

standing for purposes of this action, SAF, *throughout the entirety of this litigation*, has had 18-to-20-year-old, Pennsylvania members. Thus, for the foregoing reasons, the Commissioner's arguments are meritless.

### *A. Plaintiffs Brown, Palmer, and Ness Continue to Have Standing*

While the Commissioner argues that Plaintiffs Brown, Palmer, and Ness no longer have standing because they have turned 21 and resultantly their claims are allegedly moot (Doc. 67, pg. 3), he fails to recognize that while such may be argued in relation to their challenge to Section 6109(b)—requiring an individual to be 21 to obtain an LTCF—as he admits in his Response to Plaintiffs' SOMF, Plaintiffs desire "to be able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, including a handgun, concealed on [their] person and in motor vehicles, in public and through GFSZs for all lawful purposes including self-defense of [themselves] and her family,"[37] as well as, "to be able to lawfully transport all of [their] firearms within the Commonwealth, *without restriction*" including, but not limited to, transporting their loaded and unloaded to numerous locations precluded by Sections 6106, 6108.[38] Thus, simply because their standing to challenge Section 6109(b) may be argued to no longer exist, does not mean that their standing to challenge Sections 6106, 6108 does not still remain. And given the Commissioner's

[37] Doc. 68, ¶¶ 21, 34, 48.
[38] *Id.*, ¶¶ 22, 35, 49 (emphasis added).

statement that "challenging the Philadelphia-carry provision requires demonstrating a specific intent of visiting that locale" (Doc. 67, pgs. 7-8), it bears noting that he *admitted* that all the individual Plaintiffs desire to do just that.[39]

Resultantly, the Commissioner's argument, at least as it relates to Plaintiffs Brown, Palmer, and Ness and Sections 6106, 6108, is meritless.

### *B. SAF's Membership Throughout This Litigation Includes 18-to-20-year-old, Pennsylvania Members*

Initially, for the same reasons Plaintiffs Brown, Palmer, and Ness have standing to challenge Sections 6106, 6108, SAF also continues to maintain standing, as the Individual Plaintiffs are all members of SAF and SAF, in addition to them, has numerous other Pennsylvania members, who are aggrieved by Section 6106, 6108, 6109(b).[40]

Furthermore, throughout the entirety of this litigation, SAF has *at all times* had 18-to-20-year-old, Pennsylvania members and such should not come as a shock

---

[39] *Id.* And for example, beyond the Commissioner admitting their desire to be able to "[t]ravel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth, including in GFSZs and *Philadelphia*, a loaded, operable firearm on [their] person for self-defense," he admits that Palmer desires to go to "Pat's King of Steaks in Philadelphia, PA" and the Philadelphia Zoo.

[40] *See Vill. of Arlington Heights v. Metro House. Dev. Corp.*, 429 U.S. 252, 264 (1977) (holding that as long as an organization has one member who is aggrieved by a law, the organization has standing).

to the Commissioner, who is well aware that in *Lara*, based on virtually identical mootness arguments there, SAF sought to enlarge the record on appeal, initially to include George Pershall, and thereafter, when he aged out, Keegan Gaston, who would remain under 21 until June of 2027, which in both instances, the Third Circuit granted.[41] As the Gaston motion was filed on December 6, 2024—long before Brown, Palmer, and Ness turned 21[42] —and granted by the Third Circuit less than two weeks later, on December 18, 2024,[43] the Commissioner cannot plausibly contend that he and his predecessors are unaware of SAF having at least one Pennsylvania member, who will remain under 21, until June of 2027, and is interested in challenging Pennsylvania's draconian laws.

Furthermore, as addressed previously, SAF additionally has life members, in *every* federal district of this Commonwealth, who are residents, between the ages of 18 and 20, including, but not limited to, life members Keegan Gaston,[44] Nicholas Chapogas,[45] August Macro,[46] and Kelanai Suter,[47] who desire to lawfully carry and

[41] *See* Exhibits E and F; *see also*, *Lara*, 125 F.4th at 445, fn. 28.
[42] *See* Commissioner's SOMF, ¶¶ 1-6, stating their ages and improperly, their birthdates.
[43] *See* Exhibit F.
[44] *See* Exhibit J, Declaration of Keegan Gaston.
[45] *See* Exhibit G, Declaration of Nick Chapogas.
[46] *See* Exhibit H, Declaration of August Macro.
[47] *See* Exhibit I, Declaration of Kelanai Suter.

lawfully transport firearms, including in Philadelphia,[48] for the protection of themselves, loved ones, and others, but for Defendant's enforcement of the challenged laws.[49] SAF also has a life member, who is a resident of this Commonwealth and will turn 18 years of age by the end of January 2027, and whom, upon turning 18 years of age, desires to lawfully carry and lawfully transport firearms, including in Philadelphia,[50] for the protection of himself, loved ones, and others, but for Defendant's enforcement of the challenged laws.[51]

Given this factual background, in order to have standing to bring a pre-enforcement challenge regarding the constitutionality of a statute, all a plaintiff must do is allege (or have a member who alleges) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation marks omitted). For an organization, like SAF, to have standing to maintain a pre-enforcement challenge, it

---

48 *See* Exhibits G, H, I, J, ¶¶ 5., (c.) where beyond specifying a desire to be able to "[t]ravel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth, including in GFSZs and *Philadelphia*, a loaded, operable firearm on [their] person for self-defense," they each enumerate specific locations in Philadelphia, where they wish to go, like Plaintiff Palmer.

49 *See* Exhibit K, Declaration of Alan Gottlieb, ¶ 6.

50 *See* Exhibit M, Declaration of B.R., filed under seal ¶ 5., (c.), as well as, subsection (iv.) specifying Independence Hall in Philadelphia.

51 *See* Exhibit K, ¶ 7; *see also*, Exhibit M.

needs just *one* member who would has standing in his or her own right. *Vill. of Arlington Heights.*, 429 U.S. at, 264; *see also NRA v. BATFE*, 700 F.3d 185, 191–92 (5th Cir. 2012). And the only way for SAF to lose standing, would be for it to entirely lack an 18-to-20-year-old member with an interest in challenging Pennsylvania's laws. *See Hirschfeld v. BATFE*, 14 F.4th 322, 326–27 (4th Cir. 2021). Because there has *never* been a time that SAF lacked a Pennsylvania member with an interest in this action, it continues to have standing and this Court retains jurisdiction. *See Jones v. Bonta*, 34 F.4th 704, 713 (9th Cir. 2022), *vacated on reh'g en banc*, 47 F.4th 1124 (9th Cir. 2022) (en banc) (vacating for further consideration in light of *Bruen*)).

And to the extent the Commissioner attempts—as he did unsuccessfully before the Third Circuit in relation to both Pershall and Gaston—to claim some form of hardship from not knowing about, and needing discovery from, members Chapogas, Macro, and Suter, beyond he and his predecessors *clearly* having knowledge of Gaston and failing to inquire, "[i]n a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant." *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011). Or stated slightly differently, it is enough that "[w]e have only the [statute] itself" and the "statement of basis and purpose that accompanied its promulgation." *Reno v. Flores,* 507 U.S. 292, 300–301(1993); *see also Worth v.*

*Jacobson*, 108 F.4th 677, 686 (8th Cir. 2024) (declaring that where "Plaintiffs assert that the Carry Ban is facially unconstitutional, and the relief sought is a permanent injunction on its enforcement. Neither requires an individual plaintiff's participation in the lawsuit.") Moreover, even where a case is on appeal before the Third Circuit, it will consider new evidence, including declarations and affidavits, to determine whether or not a case is moot. *In re Application of Adan*, 437 F.3d 381, 389 fn.3 (3d Cir. 2006); *see also*, Exhibits E and F, where the Third Circuit did exactly that in *Lara*, when mootness concerns were raised and granted supplementation.

Thus, there can be no question that SAF has standing, based on its 18-to-20-year-old Pennsylvania members, to maintain its challenge to the complained of laws.

*C. No Different Than in Lara, Plaintiffs Can Also Demonstrate Capable-of-Repetition-yet-Evading-Review, Especially Given the Commissioner's Ongoing Enforcement of the Challenged Laws and Dilatory Tactics*

As the Third Circuit held in *Lara*, 125 F.4th at 446, while the individual Plaintiffs had turned 21, they were nevertheless entitled to the Court holding that the capable-of-repetition-yet-evading-review exception to the mootness doctrine applied, "because Pennsylvania continues to [enforce its law], and it is reasonably likely that other 18-to-20-year-olds, including members of the organizational Appellants here, namely the Second Amendment Foundation and the Firearms Policy Coalition, will be banned from carrying guns in public yet again." While

Plaintiffs don't dispute that a plaintiff bears the burden to show that there is "more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability" (*Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 231 (3d Cir. 2021)), there is no dispute that the Commissioner continues to enforce Sections 6106, 6108, 6109(b). Resultantly, especially given the Commissioner's dilatory actions in both *Lara* and this matter—where he has constantly attempted to have them stayed or delayed with the hopes of mooting the case based on the age of the individual plaintiffs[52]—there can be no dispute that the challenges to these unconstitutional regulations, especially Section 6109(b), will continue to evade review. In no better point of fact, as of filing this brief, this case has been pending 804 days. Moreover, as the Commissioner should expect at this point, SAF and its members will continue to challenge his enforcement of Section 6106, 6108, and 6109(b) until a final decision is rendered, finding them unconstitutional; thereby establishing well beyond a reasonable expectation or a demonstrated probability that if this matter were dismissed on mootness grounds, a new action would be forthcoming, with, at a minimum, Chapogas, Macro, Suter, and Gaston leading the charge.

---

[52] *See* Exhibit O, reflecting Defendant's six successive requests to extend or stay his summary judgment deadlines.

### *D. Alternatively, the Court Should Permit Chapogas, Macro, Suter, and Gaston to be Added as Plaintiffs or Grant Them Intervention*

In the alternative, if for any reason the Court does not believe the Plaintiffs have established ongoing standing to challenge Sections 6106, 6108, or 6109(b), Plaintiffs respectfully request that leave be granted to add Chapogas, Macro, Suter, and Gaston as party plaintiffs, pursuant to Fed.R.Civ.P. 21, or alternatively, they be allowed to intervene as plaintiffs, pursuant to Fed.R.Civ.P. 24.

In pertinent part, Fed.R.Civ.P. 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." "The rule was adopted to eliminate inflexible rules of joinder borne of formalistic procedures long ago abandoned by the federal courts" and "can be used, for example, to preserve jurisdiction or to cure venue defects" so to foster "judicial efficiency and facilitate[] adjudication of cases on their merits." *Fraser v. ATF*, No. 3:22-CV-00410, 2023 WL 5490129, at *2 (E.D. Va. Aug. 24, 2023) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 1681, 1682 (3d ed.) (April 2023)).

Fed.R.Civ.P. 24(b)(1), on the other hand in pertinent part, permits anyone to intervene that "has a claim or defense that shares with the main action a common question of law or fact." However, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3).

In this matter, as discussed previously and reflected in their declarations, Chapogas, Macro, Suter, and Gaston—identically to Brown, Palmer, and Ness—all share the same claim that Sections 6106, 6108, 6109(b) are unconstitutional. And it is hard to fathom how their being added as plaintiffs would unduly delay or prejudice the adjudication of this matter or the Commissioner, since he has sought, at every turn, to delay this matter, in an attempt to moot this case. Furthermore, as mentioned above, in the event this case would be dismissed on mootness grounds, Chapogas, Macro, Suter, and Gaston are prepared to bring a new action. Thus, not adding them as plaintiffs to this action, would only serve to waste the judicial resources spent in this matter and further unduly delay the inevitable.

In a similar situation—but where no organization was a plaintiff—the U.S. District Court for the Eastern District of Virginia, in relation to a federal regulations that precluded 18-to-20-year-olds from purchasing handguns from federally-licensed dealers, granted plaintiffs request, pursuant to Fed.R.Civ.P. 21, to add Justin Fraser as a plaintiff and while finding the request to intervene to likewise be "substantively meritorious" dismissed the request as being moot, based on Fraser being added as a plaintiff. *Fraser*, 2023 WL 5490129, at *1-5. Thus, if for any reason the Court does not believe the Plaintiffs have established ongoing standing to challenge Sections 6106, 6108, or 6109(b), Plaintiffs respectfully request that leave to add Chapogas, Macro, Suter, and Gaston.

## II. Plaintiffs are Entitled to Summary Judgment in Relation to Section 6106, 6108, and 6109(b)

It is once again interesting that the Commissioner does not spend *any* time addressing the framework to be applied in a Second Amendment challenge. Regardless, the Supreme Court in *Bruen* explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. at 17. To counter this presumptive protection, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. In fact, *Bruen* could not be clearer in its holding that it is *the government* that bears the burden of justifying its firearm regulations. *See id.* at 24 ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."); *id.* at 33-34 (explaining "the burden falls on respondents"); *id.* at 38-39 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)).

The *Bruen* Court eschewed a two-step analysis, instead, calling courts to look to the "text, as informed by history." *Id.* at 19. To determine whether a restriction is constitutional, the Court explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The

government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24. It is the Government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

The *Rahimi* Court reaffirmed the analysis provided in *Bruen* that "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'"[53] 144 S. Ct. at 1896 (citing *Bruen*, 597 U.S. at 24). The Court went to declare:

> As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances" … Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding.

[53] It bears noting that the Court focused on laws enacted around the time of the ratification of the Second Amendment in 1791. This is consistent with the Third Circuit's holding in *Lara*, 91 F.4th at 134, that the Second Amendment must be "understood according to its public meaning in 1791."

> And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id*. at 1898 (citations omitted).

Most recently, in *Wolford*, the Supreme Court considered whether Hawaii's law prohibiting anyone from entering private property that is open to the public, while lawfully carrying a firearm, without express authorization of the property owner, violated the Second Amendment. 146 S.Ct. at 2040. In holding that Hawaii's law "hobbles what the Second Amendment protects: the right of Americans to carry arms for self-defense *as they go about their daily lives*," the Court declared that "the law is unconstitutional." *Id*. at 2041. While the holding, in and of itself, should be sufficient for purposes of Plaintiffs' challenges in this matter, Plaintiffs will nevertheless address the Court's elaboration on the *Bruen* two-step analysis.

Specifically, in the first step, "a court must determine whether the law before it clashes with the 'plain text' of the Amendment's language" by answering three subsidiary questions. *Id*. at 2043. First, does the law apply to the "people;" that is, members of the political community? *Id*. Second, does the law concern any form of "Arms;" that is, any weapon customarily used for offensive or defensive purposes? *Id.* Third, does it place any restrictions on either the keeping or the bearing of arms? *Id.* If the law clashes with the plain text, it is *presumptively* unconstitutional and the

burden shifts to the government, under step two, to show that the law does not infringe the "historical understanding of the codified right." *Id*. at 2044.

In relation to the historical understanding of the codified right, the Court explained that the best evidence is "what *Bruen* called historical analogues … old legal rules from which a court may draw a strong inference that the modern law at issue is consistent with the codified right." *Id*. (internal citations omitted). In evaluating historical analogues, *Wolford* reaffirmed *Bruen's* instruction to courts to inquire into, first, the number of jurisdictions where the analogue was adopted, because "[a]n outlier legal rule adopted in a few locales is not enough." *Id.* Second, to inquire into the extent to which the analogue was well-accepted, whether expressly or implicitly. *Id.* Third and finally, to inquire into whether the analogue is "relevantly similar" to the challenged law. *Id.* This inquiry requires comparing "how" and "why" the historical analogue burdened the keeping and bearing of arms with the burden imposed by the modern regulation. *Id*. The court must determine that the "how" and "why" are close enough for the court to say: "Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is consistent with that right." *Id*.

With this framework in mind, Plaintiffs turn to the *Bruen* two-step analysis.

### *A. The Second Amendment's Plain Text Protects Plaintiffs' Conduct*

As set forth *supra*, in relation to the first *Wolford* question, the Third Circuit has already held that the "People," to which the Second Amendment applies, includes 18-to-20-year-olds (*Lara*, 125 F.4th at 445) and the Commissioner no longer disputes this in his brief. In turning to the second *Wolford* question, there cannot be any question that the challenged laws concern "any weapon customarily used for offensive or defensive purposes," as they apply to rifles, shotguns, and handguns. *See Heller*, 554 U.S. at 629 (declaring "the handgun to be the quintessential self-defense weapon.")

Lastly, in turning to the third *Wolford* question, the U.S. Supreme Court has already declared that "self-defense is 'the central component' of the Second Amendment right" (*McDonald,* 561 U.S. at 767), that to "bear arms" means to "wear, bear, or *carry…upon the person or in the clothing or in a pocket*, for the purpose…of *being armed and ready for offensive or defensive action* in a case of conflict with another person" (*Heller*, 554 U.S. at 584), and that the "Second Amendment protects[] the right of Americans to carry arms for self-defense as they go about their daily lives." *Wolford,* 146 S.Ct. at 2041; *see also Bruen*, 597 U.S. at 10 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.")

Thus, as set forth *supra*, there can be no dispute that the Second Amendment's plain text covers Plaintiffs' desired conduct of (1) being able to procure LTCFs to be able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, concealed on their persons and in motor vehicles, in public, including in GFSZs and Philadelphia, for all lawful purposes, including self-defense of themselves and their family, and (2) in the absence of a LTCF, being able to lawfully carry and lawfully transport loaded and unloaded, operable firearms, concealed and openly on their persons and in motor vehicles, in public, including in Philadelphia, for all lawful purposes, including self-defense of themselves and their family.[54]

### *B. There Exists No Historical Tradition of Similar Firearm Regulation*

Although the burden is on the Commissioner to establish a historical tradition of similar firearm regulation around the time of Founding, both the Third Circuit and this Court[55] have already found that none exists. Specifically, the Third Circuit in *Lara* declared that "the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns." 125 F.4th at 444 (3d Cir. 2025).

[54] SOMF, ¶¶ 21-22, 28, 34-35, 41, 48-49, 55.
[55] *Suarez, et al. v. Paris*, No. 1:21-CV-710, Doc. 61 (M.D. Pa. July 24, 2024).

Nevertheless, Plaintiffs will address the limited arguments made by the Commissioner in relation to the challenged laws.

### 1. Sections 6106 and 6109(b) are unconstitutional

It is extremely telling that the Commissioner baldly contends that "the concealed-carry provision" is constitutional because "the Commonwealth of Pennsylvania generally permits the open carry of firearms without a license" (Doc. 67, pg. 13) without addressing *any* of Plaintiffs arguments on (1) the virtual inability to open carry, absent an LTCF, in the Commonwealth (Doc. 28, pgs. 4-7);[56] (2) the inability of 18-to-20-year-olds to obtain an LTCF (*Id.*, pgs. 7-9); and (3) the inability of the Individual Plaintiffs and similarly situated members of SAF to openly carry firearms, while walking or otherwise traversing the distance between their homes and enumerated locations, where they desire to lawfully carry a firearm. *Id.*, pgs. 9-12; *see also*, Exhibits G, H, I, J, ¶ 5, (d).

What is perhaps most damning for the Commissioner, and likely why his brief fails to address the Supreme Court's recent decision in *Wolford*, is its statement that "the Second Amendment protects[] the right of Americans to carry arms for self-

[56] What is truly troubling, is that the Commissioner even cites precedent, in other portions of his brief—such as, *Gunter*, 321 A.3d at 940—which irrefutably establish Plaintiffs' arguments, as well as, the other precedent previously cited to by Plaintiffs—such as, *Turner*, 488 A.2d at 323 and *Hopkins*, 747 A.2d at 918—which he does not refute.

defense *as they go about their daily lives*," which the challenged laws absolutely and unquestionably preclude. 146 S.Ct. at 2041. Instead, the Commissioner attempts to misportray a statement in *Bruen* as establishing that a state could "constitutionally eliminate concealed carry if they did not similarly prohibit open carry," when such was merely recited as the arguments of the Respondents regarding *antebellum* laws of a couple states, which beyond being too late in time,[57] would also not establish a tradition, as explained *supra*. Regardless, even if, *arguendo*, the Supreme Court were nevertheless to so hold, such would not save the Commissioner, as 18-to-20-year-olds are barred from obtaining an LTCF, while at the same time, barred from public open carry at 99% of the locations they desire to frequent.

No differently, the restrictions on vehicle carry are likewise unconstitutional. It is telling that the Commissioner attempts to erroneously contend that since concealed carry can be banned—which it cannot—that carry within *all* modes of transportation[58] can likewise be banned (Doc. 67, pg. 18); thereby, precluding individuals, including Plaintiffs, from being able to transport their firearms to 99% of the locations they desire to frequent, including for purposes of self-defense, in direct defiance of *Wolford* (and likely why the Commissioner fails to even mention *Wolford*). Even if, *arguendo*, the Commissioner were correct about an ability to ban

[57] *Lara*, 91 F.4th at 134.
[58] *See* fn. 14, *supra*.

either open or concealed carry, he fails to explain—because he cannot—how someone can open carry a firearm in a vehicle, per Section 6106. In fact, the precedent he cites—*Commonwealth v. Williams*, 341 A.3d 144, 157 (Pa. Super. 2025) and *Commonwealth v. Walker*, 280 A.2d 590, 591 (Pa. Super. 1971)—make Plaintiffs' arguments that open carry is absolutely barred when in or on any form of vehicle, irrefutable; leaving one with the inescapable conclusion—based on the Commissioner's own arguments—that Section 6106 is unconstitutional.

Furthermore, the Commissioner's argument regarding a *single* law precluding the firing of a gun on or near a highway (Doc. 67, pg. 19) is likewise insufficient, as—beyond the fact that the Commissioner only cites to a single law—neither the challenged regulations nor the Plaintiffs' desired conduct address the discharge of a firearm; thereby, failing to establish the "how" and "why" of the *Bruen* framework.

**2. There is no basis to sever the challenge to Section 6108 provision and transfer it to the Eastern District**

Aware that Section 6108 cannot survive a constitutional challenge, as addressed *infra*—especially in light of *Bruen*'s holding that there is no historical basis for a state to declare a particular city or portion of it a "sensitive place" with special restrictions on the right to keep and bear arms within it (597 U.S. at 31)—the Commissioner asks this Court—for the first time during the more than two and a half years of litigation, after filing an Answer (Doc. 18) on July 19, 2024, and in

the middle of cross-motions for summary judgment—to sever and transfer the challenge of Section 6108 to the Eastern District, without any analysis to the rules and precedent related to severance and transfer and application of facts to them. For these reasons alone, it should be denied.

Regardless, what is extremely troubling with the Commissioner's request is that it is premised on the federal judiciary *not* being impartial in considering constitutional challenges to statewide laws, because only a federal judge of the Eastern District would take into account the "local interests of Philadelphia." Doc. 67, pg. 14. Beyond the fact that there exists no "local interest" analysis part of the *Bruen*, and its progeny, two-step framework *or* under the impartiality of our judiciary, Section 6108 is a statewide law—not a Philadelphia ordinance—enacted by the General Assembly[59]—not Philadelphians—that applies to every resident of this Commonwealth, including Plaintiffs,[60] no different than Sections 6106, 6109(b). Moreover, no different than Sections 6106, 6109(b)—which the Commissioner does not seek to sever—it is immaterial that the "PSP is not the only entity authorized to enforce [them]." Instead, the sole purpose of the Commissioner's request—unless he is admitting that he is attempting to seek a political judicial decision—is to

[59] Which the Commissioner admits in his Answer, Doc. 18, ¶ 12, declaring "§6108 is a duly enacted statute of the Assembly."

[60] Which the Commissioner also admits, *id.*, ¶ 94, declaring "Plaintiffs would be subject to criminal prosecution if they violate §6106 and 6108, which *apply to all Pennsylvanians*." Emphasis added.

continue his *modus operandi* of delaying the inevitable; in this situation, the striking down of Section 6108 as unconstitutional.

Nevertheless, to the extent this Court is to even consider the Commissioner's request and without the benefit of knowing his legal arguments, Plaintiffs will address severance and transfer. As the Third Circuit has acknowledged, pursuant to 28 U.S.C. § 1404(a), "a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). However, the "movant bears the burden of persuasion" and the "[f]actors the court must consider include the three enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home. Courts consider these factors to determine, on balance, whether the litigation would "more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id*. at 57.

First and foremost, it was the Commissioner who bore the burden of persuasion and failed, by failing to address the law and factors. Second, even if, *arguendo*, the burden were on Plaintiffs—who are opposed to any severance and

transfer of their challenges—Brown, Ness, and Palmer all live the Middle District of Pennsylvania and the PSP, including the Commissioner, are headquartered in Harrisburg, PA, which is also in the Middle District of Pennsylvania. With the exception of SAF,[61] as all parties and witnesses are in the Middle District, it is the most convenient of the judicial districts. Furthermore, Plaintiffs chose to bring the action in the Middle District and the law was enacted by the General Assembly in the Middle District. Thus, in the interest of justice—with justice being blind—the Middle District is the appropriate forum. And lastly, the Plaintiffs believe, in the context of a challenge to the constitutionality of a statewide law, it is wholly improper to consider "local interests," as such impugns the impartiality of the judiciary, since a law either is or is not constitutional, regardless of any local interests. Even if such isn't the case, the balancing of the factors clearly results in the Middle District being the proper venue.

### 3. Section 6108 is unconstitutional

Just as the *Bruen* Court declared that "there is no historical basis for New York to effectively declare the island of Manhattan a sensitive place" and to regulate arms within it differently than in the remainder of New York (597 U.S. at 31), neither is

[61] It is headquartered in Bellevue, Washington, which is in the judicial district of the Western District of Washington and thus immaterial to the analysis, as it is not based in a Pennsylvania district.

there a basis for Pennsylvania to treat Philadelphia differently than the rest of the Commonwealth. Even in the absence of the *Bruen* Court's pronouncement, as Plaintiffs have addressed previously, the restriction in relation to Section 6108 are all encompassing, including the public streets and property, inclusive of not only government buildings and spaces but also all roads and sidewalks "used by members of the public." *Goosby*, 380 A.2d at 806. Or, as the Commissioner declares, "it imposes a complete ban on carrying in Philadelphia (at least, for those individuals unable to get a license)." Doc. 67, pgs. 17-18. What is truly mind-boggling about the Commissioner's argument is that 6108 is virtually identical to 18 Pa.C.S. § 6107, which the Third Circuit struck down as unconstitutional in *Lara*, but unlike § 6108 which applies 24/7/365, only applied during declarations of emergency. In fact, Section 6107 afforded an exception—actively engaged in a defense of that person's life or property from peril or threat—that Section 6108 does not provide. Or stated differently, Section 6108 is not only more restrictive, but effective at all times. Thus, there cannot be any question that it is unconstitutional.

While the Commissioner cites a 1721 law of the General Assembly regulating discharge of a firearm, in the absence of a license, in Philadelphia—which does not appear to have been in existence at the time of our Founding or the ratification of the

Second Amendment—such is immaterial, as beyond only regulating *discharge*[62,63] and allowing for a permit to be obtained (unlike Section 6109(b)'s preclusion on 18-to-20-year-olds to obtain a permit), the Supreme Court, just two months ago, in *Wolford*, reaffirmed *Bruen*'s holding that the Second Amendment protects "the right of Americans to carry arms for self-defense as they go about their daily lives." 146 S. Ct. at 2041. Carrying an arm for self-defense would be meaningless, if the individual were able to be constitutionally prohibited from discharging it.

Furthermore, the Commissioner's late 19th century laws similarly fail, as they come too late in time and to do not refer to/establish laws in existence around the time of Founding, as required and addressed *supra*.[64]

* * * *

Accordingly, there can be no dispute, based on binding precedent, that there exists no similar historical tradition and that Plaintiffs are entitled to summary judgment.

---

[62] Discharging of firearms does not appear anywhere within any of the Plaintiffs' declarations or the Complaint. They unequivocally state that they wish to "carry" and "transport" arms and Sections 6106, 6108, and 6109(b) do not speak to discharge of firearms. Thus, the examples are irrelevant and fail to meet the "how" and "why" requirement of *Bruen*.

[63] The Superior Court reached the same conclusion in *Commonwealth v. Sumpter*, 340 A.3d 977, 988 (Pa. Super. Ct. 2025), where, in relation to the 1721 law, it declared "carrying a gun in public in Philadelphia and **shooting** a gun in public in Philadelphia are two very distinct actions." Emphasis in original.

[64] *Lara*, 91 F.4th at 134.

## Conclusion

For all these reasons, this Court should grant Plaintiffs summary judgment and enjoin the Commissioner, his PSP, agents, and those acting in concert with him from enforcing those provisions of 18 Pa. C.S. §§ 6106, 6108, and 6109 that prohibit Plaintiffs and other similarly situated, law-abiding adults from exercising their Second Amendment right to carry operable firearms in public for all lawful purposes, including self-defense.

Date: September 2, 2026

Respectfully Submitted,



Joshua Prince, Esq.
Joshua@Civilrightsdefensefirm.com
PA Bar No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)

Dillon Harris, Esq.
DHarris@Civilrightsdefensefirm.com
PA Bar No. 329266
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81142

Attorneys for Plaintiffs

## Certificate of Word Count Compliance

I, the undersigned, certify that the foregoing brief complies with the Court's Order of July 29, 2026 (Doc. 64) permitting the Plaintiffs up to and including 10,000 words. This brief contains 9,569 words, as calculated by the word processing system used to prepare this brief.

Joshua Prince, Esq.
Attorney Id. No. 306521

**Certificate of Service**

The undersigned hereby certifies that a true and accurate copy of Plaintiffs' Consolidated Memorandum, Exhibits, and Response to the Commissioner's Statement of Material Facts was filed electronically through the Middle District of Pennsylvania Electronic Filing System. Notice of these filing will be sent by operation of the Court's Electronic Filing System to all registered users in this case.

Joshua Prince, Esq.
Attorney Id. No. 306521